TAYLOR BUILDING CORPORATION OF AMERICA, APPELLANT,
*v.* BENFIELD ET AL., APPELLEES.

[Cite as *Taylor Bldg. Corp. of Am. v. Benfield,*
117 Ohio St.3d 352, 2008-Ohio-938.]

(Nos. 2006–1890 and 2006–2043—Submitted September
18, 2007—Decided March 12, 2008.)

———————

CUPP, J.

{¶ 1} Marvin and Mary Ruth Benfield, appellees, contracted with appellant, Taylor Building Corporation of America ("Taylor") to build a house on the Benfields' land in Clermont County, Ohio. That contract contained an arbitration provision. Unsatisfied with Taylor's work, the Benfields refused to make further payments to Taylor under the contract and demanded a refund of the money they had already paid. Taylor responded by suing the Benfields to enforce its liens on the property and moving to stay the case pending arbitration. The dispute here concerns the enforceability of the arbitration provision and, particularly, the standard of review for a motion to stay judicial proceedings pending arbitration when the underlying issue is whether that provision is unconscionable.

{¶ 2} We hold that the proper standard of review of a determination whether an arbitration agreement is enforceable in light of a claim of unconscionability is de novo, but any factual findings of the trial court must be accorded appropriate deference. Because we conclude on de novo review that the arbitration agreement is not unconscionable under Ohio law, we reverse in part the court of appeals' judgment.

# I

## A

{¶ 3} The Benfields contracted with Taylor, a Kentucky corporation, to build a house on the Benfields' property in Clermont County, Ohio. The contract included handwritten specifications for the particular features of the home to be constructed for the Benfields and contained an arbitration agreement. In March 2003, Taylor began construction and completed the foundation, framing, roof, and brick exterior of the house. Taylor alleges that in July 2003, the Benfields refused to make further payments on the house and issued a stop-work order, prohibiting Taylor from completing the house. The Benfields allege that the Clermont County building inspector discovered numerous building-code violations and ordered all work to cease until code violations were corrected.

{¶ 4} Taylor then filed this case in the Clermont County common pleas court seeking damages for breach of contract, recovery for unjust enrichment and quantum meruit, and foreclosure of Taylor's mechanic's lien on the property. The Benfields answered, denying that they were in breach of the contract, and asserted counterclaims for rescission and damages for violations of the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq., breach of contract, negligent construction, and fraud. The Benfields also alleged that the contract was unconscionable and unenforceable. (Taylor did not file a pleading in response to the counterclaim.) When Taylor filed the complaint, Taylor also filed a motion under R.C. 2711.02(B) to stay the litigation in favor of mediation and arbitration pursuant to the parties' contract. The Benfields opposed the motion, contending that the mediation and arbitration clauses in the agreement were unenforceable.

{¶ 5} The mediation and arbitration clauses in the contract provide:

{¶ 6} "15. (a) *Mediation*—That in the event of any dispute between First Party [Taylor] and Second Party [the Benfields] as to the quality of construction, quality of materials, contract disputes or similar disputes as to the construction, the parties shall endeavor to settle the dispute in an amicable manner by mediation administered by the American Arbitration Association under its construction industry mediation rules. Notices of the demand for mediation shall be filed with a copy of this Construction Agreement with the American Arbitration

Association and to the other party to this agreement. The site for the mediation shall be Louisville, Kentucky (Jefferson County).

{¶ 7} "(b) *Arbitration*—In the event the issues cannot be resolved by mediation, then any claims or disputes arising out of this Construction Agreement or the alleged breach thereunder shall be settled by **mandatory and binding** arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association unless both parties mutually agree otherwise. (This position shall not affect First Party's right to secure a mechanic's lien and to pursue those remedies described in Section 6 and 9 [of this Agreement].) Notices of the demand for arbitration shall be filed with a copy of this Construction Agreement with the American Arbitration Association and the other party to this Agreement. The site for the arbitration proceeding shall be Louisville, Kentucky (Jefferson County)." (Boldface sic.)

{¶ 8} The Benfields initialed this provision of the contract. The agreement also contained a broad severability clause, which provided, "The invalidity or unenforceability of any terms or provisions herein, or any clause or portion thereof, of this Agreement, shall in no way affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect."

B

{¶ 9} The trial court held a hearing on Taylor's motion to stay and granted that motion in part. The trial court concluded that the Ohio Consumer Sales Practices Act does not preclude arbitration clauses in consumer sales contracts. The trial court also rejected the Benfields' argument that Taylor waived arbitration by seeking to enforce its mechanic's lien. The Benfields did not appeal those rulings to the court of appeals.

{¶ 10} The trial court rejected the Benfields' argument that the contract was unconscionable and therefore unenforceable. Regarding the Benfields' challenges to particular contract provisions, the court first found that "the loss of the right to a jury trial is an obvious consequence" of an arbitration agreement and therefore did not render the provision unconscionable. Additionally, the trial court rejected the argument that paragraph seven of the contract, which would require the Benfields to pay Taylor's reasonable legal costs to enforce its rights under the contract, is unconscionable. The trial court concluded that the parties need not have the same obligations for there to be consideration for a contract. Additionally, the trial court noted that the contract does not limit the causes of action that would otherwise be available to the Benfields. The trial court further opined that only if the Benfields took possession of the real estate without paying Taylor for the home would the Benfields have to pay Taylor's attorney fees.

{¶ 11} The trial court held that the provision in the arbitration agreement requiring the arbitration to be held in Louisville, Jefferson County, Kentucky was unenforceable because it was in violation of R.C. 4113.62. Because the trial court found that the arbitration agreement as a whole was reasonable, the court limited the application of the venue provision. Thus, the trial court required the mediation and any arbitration to be held in Clermont County, Ohio, where the improvement to real estate at issue is located, in accordance with R.C. 4113.62(D)(2). Taylor did not cross-appeal this ruling to the court of appeals.

{¶ 12} The trial court found that the remaining provisions of the arbitration agreement were not one-sided and that "there is no evidence of a substantial fee required as a condition precedent to arbitration." Similarly, the trial court found "no evidence that the arbitration costs and fees are prohibitive, unreasonable, and unfair as applied to the [Benfields]."

{¶ 13} Rejecting the Benfields' claim of procedural unconscionability, the trial court found that Taylor did not present this contract to the Benfields on a take-it-or-leave-it basis. The court noted that there are "a multitude of homebuilders in the local area," so the Benfields did not have to enter into this contract with Taylor to build their house. The trial court found that the provisions of the contract were in standard, not fine, print, and there was no evidence that the Benfields had been rushed through the signing process. The trial court found that the record did not show that the Benfields were unaware of the effect of the arbitration clause and in fact showed that they had assented to it by initialing it. The trial court found that Taylor's salesperson's statement to the effect that there would be no need for arbitration because Taylor builds quality homes to be a statement of opinion that did not constitute a misrepresentation of fact. Accordingly, the trial court concluded that this was not a contract of adhesion and that the arbitration agreement was not procedurally unconscionable.

C

{¶ 14} On appeal, the Twelfth District Court of Appeals reversed. The appellate court concluded that the arbitration clause was unconscionable and unenforceable. *Taylor Bldg. Corp. of Am. v. Benfield*, 168 Ohio App.3d 517, 2006-Ohio-4428, 860 N.E.2d 1058, ¶ 13. The court of appeals determined that the issue whether a contract provision is unconscionable is a question of law, reviewable de novo. Id. at ¶ 15–16.

{¶ 15} On de novo review, the appellate court concluded that the arbitration provision was unconscionable. Id. at ¶ 23. The appellate court held the arbitration clause procedurally unconscionable even though the Benfields could have had their house built by other homebuilders in the area. Id. at ¶ 26–27. The court opined that the Taylor salesman's representation that the arbitration clause was not important because Taylor had never had any disputes over their product's

quality, his statement that the company would not enter into a contract without the arbitration clause, and the fact that Taylor had prepared the preprinted form contract made the clause procedurally unconscionable. Id. at ¶ 27–28.

{¶ 16} The appellate court also concluded that the contract as a whole was substantively unconscionable based on a number of provisions that the court found unfair. Id. at ¶ 29. In addition to the arbitration clause, the provisions that the appellate court viewed as unconscionable included (1) the statement that the Benfields had no right of possession of the real estate and improvements until full and final payment had been made to Taylor, (2) a $950 liquidated-damage provision (with $60 each day of continued violation), (3) the requirement that the Benfields pay Taylor's legal costs, including attorney fees, for enforcement of Taylor's rights, (4) Taylor's entitlement to enforce its liens on the property as an additional remedy, and (5) the provision prohibiting the Benfields from interrupting construction. See id., ¶ 30–37.

{¶ 17} The court found these clauses "heavily skewed in favor of [Taylor]." Id. at ¶ 38. For example, the appellate court noted that the clauses barring the Benfields from halting construction and possessing their property prevented them from mitigating their damages in the event of a breach and stopped them from trying to correct building-code violations. Id. at ¶ 38. The appellate court also was troubled by the clause requiring the Benfields to pay Taylor's attorney fees and other legal costs, as the court of appeals concluded that Taylor was not similarly burdened. Id. at ¶ 39. Additionally, the appellate court noted that the agreement did not disclose the costs of arbitration or mediation, which the court concluded were likely to be significant. Id. at ¶ 41. The court also held that the provisions of the contract requiring litigation or arbitration to be held in Kentucky are void under R.C. 4113.62(D). Id. at ¶ 43–45.

{¶ 18} In addition to holding that all of those clauses caused the agreement to be substantively unconscionable, id. at ¶ 42–46, the appellate court opined that the clause requiring litigation to take place in Kentucky if the arbitration and mediation clauses were held to be unenforceable deprived any arbitration award of finality. The court concluded that under *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 716, 590 N.E.2d 1242, and *Miller v. Gunckle*, 96 Ohio St.3d 359, 2002-Ohio-4932, 775 N.E.2d 475, ¶ 10, the arbitration provision in Taylor's contract was not a "true arbitration" clause, so the entire clause was unenforceable. *Taylor*, 168 Ohio App.3d 517, 2006-Ohio-4428, 860 N.E.2d 1058, ¶ 47–48.

{¶ 19} Based on its assessment of the arbitration clause and other contract provisions, the appellate court held the parties' contract void and unenforceable. Id. at ¶ 50.

D

{¶ 20} Taylor appealed, and the court of appeals certified its decision as in conflict with those of other courts of appeals in this state. The question the appellate court certified for our review is:

{¶ 21} "Should an appellate court apply a de novo or abuse of discretion standard of review when reviewing a trial court's decision granting or denying a motion to compel arbitration where it is alleged that the arbitration clause is unconscionable?"

{¶ 22} We accepted review of the certified conflict question and Taylor's first proposition of law in its discretionary appeal, which states:

{¶ 23} "The proper standard of review for a Court of Appeals reviewing a decision of a trial court granting or denying a motion to compel arbitration under O.R.C. Section 2711.02 where the party opposing the motion alleges unconscionability of the arbitration clause is 'abuse of discretion.' "

{¶ 24} Although the certified question and proposition of law accepted for review are phrased in terms of a motion to compel arbitration, see R.C. 2711.03(A), we note that this case involves an order to stay judicial proceedings pending arbitration, see R.C. 2711.02(B).

II

{¶ 25} The Ohio General Assembly in R.C. Chapter 2711 has expressed a strong policy favoring arbitration of disputes. R.C. 2711.01(A) provides:

{¶ 26} "A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."

{¶ 27} Indeed, the Ohio courts recognize a "presumption favoring arbitration" that arises "when the claim in dispute falls within the scope of the arbitration provision." *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859; see also *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 18.[1]

---

1. Ohio's strong policy favoring arbitration is consistent with federal law supporting arbitration. See Federal Arbitration Act, Section 2, Title 9, U.S.Code ("A written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

{¶ 28} Ohio law directs trial courts to grant a stay of litigation in favor of arbitration pursuant to a written arbitration agreement on application of one of the parties, in accordance with R.C. 2711.02(B). That statute provides:

{¶ 29} "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration."

{¶ 30} Ohio law authorizes appellate review of such orders. R.C. 2711.02(C) provides:

{¶ 31} "[A]n order under division (B) of this section that grants or denies a stay of a trial of any action pending arbitration * * * is a final order and may be reviewed, affirmed, modified, or reversed on appeal pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."

{¶ 32} In the case before us, the narrow issue is whether the standard of appellate review of an R.C. 2711.02(B) stay order is de novo or abuse of discretion when the underlying issue is whether the arbitration clause is unenforceable because of alleged unconscionability.[2]

### A

{¶ 33} Arbitration agreements are "valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A). Unconscionability is a ground for revocation of a contract. See, e.g., *Williams,* 83 Ohio St.3d at 471, 700 N.E.2d 859.

{¶ 34} Unconscionability includes both " 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " *Lake Ridge Academy v. Carney* (1993), 66 Ohio St.3d 376, 383, 613 N.E.2d 183, quoting *Williams v. Walker–Thomas Furniture Co.* (C.A.D.C.1965), 350 F.2d 445, 449; see also *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294. The

---

2. The arbitration clause in the parties' contract is broad. The parties do not contend in this court that their claims (or counterclaims) fall outside the scope of the arbitration agreement. Accordingly, we do not consider whether any of the claims at issue are beyond the scope of the arbitration agreement. Additionally, because the contract here pertained to construction of a single-family home for the Benfields, it was not a "commercial construction contract" within the scope of R.C. 2711.02(A) and so was not subject to R.C. 2711.02(D) (addressing arbitration clauses in commercial contracts).

party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable. See generally *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, ¶ 6; see also *Click Camera*, 86 Ohio App.3d at 834, 621 N.E.2d 1294, citing White & Summers, Uniform Commercial Code (1988) 219, Section 4–7 ("One must allege and prove a 'quantum' of both prongs in order to establish that a particular contract is unconscionable").

{¶ 35} A determination of whether a written contract is unconscionable is an issue of law. See *Ins. Co. of N. Am. v. Automatic Sprinkler Corp. of Am.* (1981), 67 Ohio St.2d 91, 98, 21 O.O.3d 58, 423 N.E.2d 151; see also *Bolton v. Crockett Homes, Inc.*, 5th Dist. No. 2004CA00051, 2004-Ohio-7318, 2004 WL 3251302, ¶ 8 (unconscionability of arbitration clause in home-construction agreement is a question of law). Courts review questions of law de novo. See, e.g., *Ignazio*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 19 (contract interpretation is a matter of law reviewable de novo); *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (same). Federal courts in cases brought under the Federal Arbitration Act have applied de novo review to issues of contract interpretation and enforceability of an arbitration clause alleged to be unconscionable. See, e.g., *Edwards v. HOVENSA, L.L.C.* (C.A.3, 2007), 497 F.3d 355, 362–363 (plenary review applied to determine enforceability of arbitration agreement alleged to be substantively unconsciona-ble); *Faber v. Menard, Inc.* (C.A.8, 2004), 367 F.3d 1048, 1051 (de novo review of determination of arbitrability based on contract interpretation); *Sydnor v. Conseco Fin. Servicing Corp.* (C.A.4, 2001), 252 F.3d 302, 304–305 (de novo review of denial of motion to compel arbitration where arbitration clause asserted to be unconscionable).

{¶ 36} Taylor argues that appellate courts should review a trial court's decision to stay litigation in the face of an allegedly unconscionable arbitration clause only for abuse of discretion. Taylor argues that the strong state policy in favor of arbitration counsels in favor of a deferential standard of review of the decision to stay litigation in favor of arbitration. See R.C. 2711.01(A); *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 500, 692 N.E.2d 574 (noting that Ohio and federal courts and the Ohio General Assembly encourage arbitration to settle disputes).

{¶ 37} We are not persuaded that the issue whether an arbitration agreement is unconscionable should be reviewed by a standard different from other legal issues involving contract interpretation. Accordingly, we agree with the Ohio and federal courts that have applied a de novo standard of review to a determination whether an arbitration agreement alleged to be unconscionable is enforceable.

{¶ 38} When a trial court makes factual findings, however, supporting its determination that a contract is or is not unconscionable, such as any findings regarding the circumstances surrounding the making of the contract, those factual findings should be reviewed with great deference. See, e.g., *Nationwide Mut. Fire Ins. Co.*, 73 Ohio St.3d at 108, 652 N.E.2d 684 (contract interpretation, a question of law, is reviewed de novo, "[u]nlike determinations of fact which are given great deference"); *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742 ("where the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court"), citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273; and *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 10 OBR 500, 462 N.E.2d 407. See also Restatement of the Law 2d, Contracts (1981), Section 208, Comment *f* ("Incidental findings of fact are made by the court rather than by a jury, but are accorded the usual weight given to such findings of fact in appellate review").

## B

{¶ 39} The court of appeals correctly identified de novo as the standard of review for a determination of whether an arbitration agreement is unconscionable and is therefore unenforceable. However, it incorrectly applied that standard in this case.

## 1

{¶ 40} We address first the preliminary question whether the appellate court properly considered the issue of unconscionability regarding the entire contract rather than just the arbitration provision.[3] The parties' arbitration clause is broad, providing that "any claims or disputes arising out of this Construction Agreement or the alleged breach thereunder shall be settled by **mandatory and binding** arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association unless both parties mutually agree otherwise." (Boldface sic.) The intent of the parties is determined from the language used in their contract. *Ignazio*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 12. Here, such a broad arbitration clause remits "any claims or disputes arising out of" the underlying contract or a breach of that contract to the arbitrator.

---

3. We did not accept Taylor's second proposition of law, which raised this issue, but we conclude that it is necessary to reach this preliminary issue to decide the proper disposition of the case under the proposition on which we granted review.

{¶ 41} As we explained in *ABM Farms,* 81 Ohio St.3d at 501–502, 692 N.E.2d 574, R.C. 2711.01, like its federal counterpart, "acknowledges that an arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits." The court reasoned, "Because the arbitration clause is a separate entity, it only follows that an alleged failure of the contract in which it is contained does not affect the provision itself." Id. at 502, 692 N.E.2d 574. Thus, in *ABM Farms,* we held that to defeat a motion under R.C. 2711.02 for a stay of litigation in favor of arbitration, "a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced." Id., citing *Krafcik v. USA Energy Consultants, Inc.* (1995), 107 Ohio App.3d 59, 63, 667 N.E.2d 1027.

{¶ 42} Similarly, when a party challenges an arbitration provision as unconscionable pursuant to R.C. 2711.01(A), the party must show that the arbitration clause itself is unconscionable. If the court determines that the arbitration clause is enforceable, claims of unconscionability that relate to the contract generally, rather than the arbitration clause specifically, are properly left to the arbitrator in the first instance.

{¶ 43} The appellate court in this case incorrectly determined that the entire contract was unconscionable based in part on that court's view that several provisions in addition to the arbitration clause were unfair. The appellate court found the contract "void and unenforceable in its entirety." *Taylor,* 168 Ohio App.3d 517, 2006-Ohio-4428, 860 N.E.2d 1058, ¶ 50. See also id. at ¶ 40 (referring to "multiple examples of the substantive unfairness of *the terms* in this contract" [emphasis added]); id. at ¶ 50 (referring to "[t]he unconscionability of the mediation/arbitration clauses *and other unduly oppressive clauses*" [emphasis added]). Among the provisions the court of appeals deemed "notably unfair" for the purpose of its substantive unconscionability analysis were paragraph six, which provides for liquidated damages and certain equitable remedies in the event of a breach of the contract; paragraph nine, which provides for Taylor's enforcement of its mechanic's lien rights on the property; and paragraph ten, which pertains to an additional fee for loans insured by certain organizations. See id. at ¶ 29–34, 42. These provisions do not appear in the arbitration clause (which is found at paragraph 15) and do not refer to arbitration proceedings. The court of appeals erred in determining the issue of the unconscionability of the contract as a whole rather than limiting its initial review to whether the arbitration clause was unconscionable.

2

{¶ 44} The trial court concluded that the arbitration clause is not procedurally unconscionable. Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' " 'age, edu-

cation, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.'" *Click Camera*, 86 Ohio App.3d at 834, 621 N.E.2d 1294, quoting *Johnson v. Mobil Oil Corp.* (E.D.Mich.1976), 415 F.Supp. 264, 268. "Factors which may contribute to a finding of unconscionability in the bargaining process [i.e., procedural unconscionability] include the following: belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors." Restatement of the Law 2d, Contracts (1981), Section 208, Comment *d*.

{¶ 45} The trial court noted that the Benfields did not have to buy a home from Taylor, because "[t]here are a multitude of homebuilders in the local area." The parties do not dispute this point. Based on this fact, the trial court reasoned, "It is not possible to state that there is inherently unequal bargaining power between these two parties." In any event, inequality of bargaining power alone is insufficient to invalidate an otherwise enforceable arbitration contract. See, e.g., *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482, ¶ 19, citing *Gilmer v. Interstate/Johnson Lane Corp.* (1991), 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (upholding agreement to arbitrate federal statutory claim).

{¶ 46} As the trial court observed, simply showing that a contract is preprinted and that the arbitration clause is a required term, without more, fails to demonstrate the unconscionability of the arbitration clause. The arbitration clause in this case appeared in standard, rather than fine, print and was not hidden. The Benfields initialed the arbitration clause and signed the contract as a whole. The trial court also found that "there is no evidence that the [Benfields] were hurried through [the] signature process." Thus, while the record does not indicate that the Benfields consulted an attorney before they signed the contract, the circumstances do not show that they were prevented from consulting with an attorney if they wished.

{¶ 47} The Benfields allege that Taylor's salesperson told them that invoking the arbitration clause would not be necessary because Taylor "never had any disputes over the quality of [its] product and workmanship," and Taylor was "concerned about keeping [its] customers happy."[4] The latter statement (that

---

4. The Taylor agent's alleged statements appear in the Benfields' response to Taylor's motion to stay. On the day of the trial court's hearing on Taylor's motion to stay, Mrs. Benfield filed a

the arbitration clause would not be necessary because Taylor was concerned about keeping its customers happy) was merely the salesman's opinion and did not amount to a misrepresentation. Cf. *Robbins v. Country Club Retirement Ctr. IV, Inc.*, 7th Dist. No. 04BE43, 2005-Ohio-1338, 2005 WL 678765, at ¶ 33 (statement to employee that arbitration agreement was "routine" to induce her to sign was not a misrepresentation and did not render the agreement procedurally unconscionable). To the extent that the statement that arbitration would not be necessary because Taylor had never had any disputes over the quality of its product and workmanship was more than an opinion, which we do not decide, the record does not show that it was a false statement of fact when made. Thus, we disagree with the court of appeals' conclusion, in determining whether the arbitration agreement was procedurally unconscionable, that the statement of the Taylor representative weakened the significance of the undisputed fact that there were other homebuilders available to build the Benfields' home. Without more, the Taylor representative's statements do not make the arbitration agreement procedurally unconscionable.

{¶ 48} The trial court determined that "nothing in the record" allowed it to conclude that the Benfields "were unaware of the impact of the arbitration clause or that they were otherwise limited in understanding its impact." That determination does not appear to be clearly wrong.

{¶ 49} The trial court determined that this was not a "contract of adhesion"— that is, a standardized form contract prepared by one party, and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms. See Black's Law Dictionary (8th Ed.2004) 342. But the court of appeals noted that Mrs. Benfield's affidavit asserted that Taylor's agent had told the Benfields that Taylor " 'would not sign a contract without the arbitration/mediation clause.' " *Taylor*, 168 Ohio App.3d 517, 2006-Ohio-4428, 860 N.E.2d 1058, ¶ 24. The stronger party's refusal to negotiate a key term is a common feature of adhesion contracts.

{¶ 50} To be sure, an arbitration clause in a consumer contract with some characteristics of an adhesion contract "necessarily engenders more reservations than an arbitration clause in a different setting," such as a collective-bargaining agreement or a commercial contract between two businesses. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d at 472, 700 N.E.2d 859. However, even a contract of adhesion is not in all instances unconscionable per se. As the Seventh Circuit recently observed in rejecting a claim that an arbitration clause was unconscionable, "few consumer contracts are negotiated one clause at a time." *Carbajal v. H*

---

document entitled "affidavit," which simply adopted as her statements the allegations in her answer, affirmative defenses, counterclaim, and her response to Taylor's motion to stay.

*& R Block Tax Servs., Inc.* (C.A.7, 2004), 372 F.3d 903, 906. Indeed, so-called "form contracts" can provide advantages to consumers. "Forms reduce transactions costs and benefit consumers because, in competition, reductions in the cost of doing business show up as lower prices * * *." Id.

{¶ 51} Even assuming that the parties' bargaining power was not equal, this is not a case like *Williams*, in which the defendant finance company was found to have conspired to defraud the plaintiff. See *Williams*, 83 Ohio St.3d at 476, 700 N.E.2d 859 ("the jury reasonably determined on the sum total of the evidence presented that employees of ITT conspired with Blair to defraud Williams, with resulting damages to her"). This court in *Williams* accordingly determined·that "any presumption in favor of arbitration was overcome *based on the entire record*" in that case. (Emphasis added.) Id. at 473, 700 N.E.2d 859.

{¶ 52} The factual record in this case is more limited than that in *Williams*, and the record supports the trial court's determination that the arbitration clause is not procedurally unconscionable.

{¶ 53} The conclusion that the arbitration clause here is not procedurally unconscionable defeats the Benfields' contention that the arbitration clause is unenforceable due to unconscionability. As noted above, the party challenging a contract as unconscionable must prove "a quantum" of both procedural and substantive unconscionability. See, e.g., *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, ¶ 6; *Click Camera*, 86 Ohio App.3d at 834, 621 N.E.2d 1294. However, we address briefly the appellate court's analysis of substantive unconscionability in this case.

3

{¶ 54} As noted above, the appellate court held the arbitration clause and other provisions in the contract to be so unfair as to be substantively unconscionable. See *Taylor*, 168 Ohio App.3d 517, 2006-Ohio-4428, 860 N.E.2d 1058, at ¶ 50. For the reasons discussed above, we address whether the mediation and arbitration provision, as opposed to the contract as a whole, is substantively unconscionable.

{¶ 55} The Benfields complain that the arbitration clause does not warn them that they are giving up their right to a jury trial. But as other courts have concluded, waiver of one's jury-trial rights is a necessary consequence of agreeing to have an arbitrator decide a dispute. See, e.g., *Pierson v. Dean, Witter, Reynolds, Inc.* (C.A.7, 1984), 742 F.2d 334, 339 ("loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate"). This aspect of the arbitration clause is not substantively unconscionable.

{¶ 56} The Benfields assert, and the court of appeals held, that the "costs of alternative dispute resolution * * * are often substantially higher than the costs associated with court proceedings." *Taylor*, 168 Ohio App.3d 517, 2006-Ohio-

4428, 860 N.E.2d 1058, ¶ 41. The appellate court was troubled by the fact that the agreement does not disclose the cost of arbitration. Id.

{¶ 57} In determining that the arbitration and mediation clauses "impose significant undisclosed costs" on the Benfields, id. at ¶ 41, the court of appeals did not give appropriate deference to the trial court's contrary determination that the Benfields "presented no evidence that the arbitration costs and fees are prohibitive, unreasonable, and unfair" as applied to them and to the trial court's specific finding that the Benfields had shown "no evidence of a substantial fee required as a condition precedent to arbitration." The Benfields attached to their brief in the court of appeals information regarding costs and fees in certain American Arbitration Association cases, but the trial court had no opportunity to consider that information. Accordingly, we do not consider it here. The lack of evidence before the trial court of excessively high arbitration costs undercuts the Benfields' claim that arbitration costs would be prohibitively expensive.

{¶ 58} In *Green Tree Fin. Corp.-Alabama v. Randolph* (2000), 531 U.S. 79, 90–91, 121 S.Ct. 513, 148 L.Ed.2d 373, the United States Supreme Court held that an arbitration agreement that does not mention costs and fees is not per se unenforceable on the theory that it fails to protect a party from potentially high arbitration costs, because the mere risk that a plaintiff would be forced to pay exorbitant costs is too speculative to justify invalidation of the arbitration agreement. Instead, the court imposed upon the party challenging the arbitration agreement the burden of proving the likelihood of incurring prohibitive costs. Id. at 92, 121 S.Ct. 513, 148 L.Ed.2d 373.

{¶ 59} *Green Tree* arose in the different context of whether an agreement to arbitrate federal statutory causes of action may be enforced under the Federal Arbitration Act, and thus, it does not directly apply to the state-law claims here. However, we believe that the same general principle obtains here—that an arbitration clause will not be held unenforceable based on unsupported allegations of prohibitive costs. The record before the trial court also failed to show that mediation or arbitration costs would be prohibitively high for the Benfields. Cf. *Faber v. Menard, Inc.* (C.A.8, 2004), 367 F.3d 1048, 1054 (requiring party claiming that arbitration is cost-prohibitive to "present specific evidence of likely arbitrators' fees and its financial inability to pay those fees," including the claimant's "particular financial situation").

{¶ 60} In light of the dearth of evidence before the trial court on the cost of mediation and arbitration and whether such costs would have been prohibitive to the Benfields, we need not, and therefore do not, decide as a matter of Ohio law whether or at what point arbitration costs can become prohibitive so as to render an arbitration agreement, or its provision allocating arbitration costs, to be substantively unconscionable.

{¶ 61} Like the trial court, the court of appeals concluded that the contract's requirement that the arbitration take place in Louisville, Kentucky was unenforceable under Ohio law. In that regard, R.C. 4113.62(D)(2) provides:

{¶ 62} "Any provision of a construction contract, agreement, understanding, specification, or other document or documentation that is made a part of a construction contract, subcontract, agreement, or understanding for an improvement, or portion thereof, to real estate in this state that requires any litigation, arbitration, or other dispute resolution process provided for in the construction contract, subcontract, agreement, or understanding to occur in another state is void and unenforceable as against public policy. Any litigation, arbitration, or other dispute resolution process provided for in the construction contract, subcontract, agreement, or understanding shall take place in the county or counties in which the improvement to real estate is located or at another location within this state mutually agreed upon by the parties."

{¶ 63} The trial court severed the Kentucky-venue provision in paragraph 15 of the agreement as void under R.C. 4113.62(D) and ordered the arbitration to be held in Clermont County, Ohio, the county where the Benfields' house was to have been built. Taylor did not challenge that ruling on appeal. Accordingly, that issue is not before us. We note, however, that given the broad severability clause at paragraph 18 of this contract, a court will not lightly conclude that the invalidity of a particular contract term requires invalidation of the entire agreement. Cf. *Ignazio*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 17 (upholding severability of judicial-review provision in arbitration agreement).

{¶ 64} The court of appeals also found unconscionable and unenforceable under R.C. 4113.62(D)(2) the provision in paragraph 16 requiring all litigation to take place in Louisville, Kentucky if the arbitration clause or any portion of it was held invalid.[5] *Taylor*, 168 Ohio App.3d 517, 2006-Ohio-4428, 860 N.E.2d 1058, ¶ 42, 46. R.C. 4113.62(D) by its terms renders invalid a contract clause imposing an out-of-state forum selection for litigation of claims arising out of a contract to build a residence in Ohio. Taylor filed this case against the Benfields in the Court of

---

5. {¶ a} Paragraph 16 of the agreement provides:

{¶ b} "[I]n the event any of the provisions of this Agreement as to mediation, arbitration or First Party buy back, are deemed unenforceable, or in the event of an action initiated by First Party pursuant to Paragraphs 6 and 9 of this Agreement, <u>both parties agree that any and all legal actions arising out of this Construction Agreement or the alleged breach thereunder shall be tried by a judge sitting without a jury and both parties do hereby Knowingly, Voluntarily and Intentionally waive any right to a jury trial. The site for the aforementioned action shall be Louisville, Kentucky (Jefferson County).</u> Nothing herein is intended or shall be construed to limit or prevent First Party from pursuing and perfecting any mechanic's lien upon the Real Estate and Improvements for sums unpaid under this Agreement. The provisions in this paragraph are a material inducement for First Party to enter into this Construction Agreement." (Underlining sic.)

Common Pleas of Clermont County, Ohio. Accordingly, it does not appear that Taylor seeks to enforce the Kentucky-venue provision in paragraph 16. Thus, we need not, and therefore do not, determine whether the Kentucky-venue provision in paragraph 16 affects the enforceability of the arbitration clause.

{¶ 65} We also note that, contrary to the court of appeals' view, paragraph 16 does not deprive any arbitration decision of finality. Cf. id. at ¶ 48. The appellate court's concern was that paragraph 16 "provides for judicial review in the event that the mediation and/or arbitration clauses are declared unenforceable." Id. Because the arbitration clause is enforceable, we have no occasion to address paragraph 16's provision for a bench trial rather than a jury trial in the event arbitration is held unenforceable. And to the extent that an arbitrator might find any other provision of the parties' construction agreement unenforceable, paragraph 16 does not purport to alter the standards for judicial review of arbitration awards set forth in Ohio statutes. See R.C. 2711.10, 2711.11, and 2711.13. Accordingly, we cannot conclude that the arbitration provision here fails to provide for final and binding arbitration. Cf. *Miller v. Gunckle*, 96 Ohio St.3d 359, 2002-Ohio-4932, 775 N.E.2d 475, ¶ 10.

{¶ 66} Finally, the Benfields also complain that paragraph seven of the contract requires them to pay Taylor's "reasonable legal costs" of enforcing its rights under the contract, including attorney fees, court costs, and fees and expenses. The court of appeals concluded that this provision was one-sided because the agreement did not require Taylor to pay the Benfields' legal costs. *Taylor*, 168 Ohio App.3d 517, 2006-Ohio-4428, 860 N.E.2d 1058, ¶ 39, 42. As the court below recognized, the obligations of the parties to a contract need not be exactly the same if the contract is supported by consideration. Id. at ¶ 40, citing *Country Club Retirement Ctr.*, 2005-Ohio-1338, 2005 WL 678765, ¶ 26.

{¶ 67} We do not decide whether paragraph seven is substantively unconscionable. As noted above, paragraph seven is not part of the arbitration clause. Additionally, we do not believe that this clause necessarily has the effect that the court of appeals attributed to it. First, while the contract does not specify that the Benfields also may obtain their "reasonable legal costs" from Taylor, the agreement does not limit the causes of action that the Benfields may pursue or the remedies that they may obtain in arbitration. Thus, it is possible that the Benfields, if they prevailed in the arbitration, could be awarded their reasonable attorney fees on their claim under the Ohio Consumer Sales Practices Act pursuant to R.C. 1345.09(F)(2). Second, paragraph seven may be read to preclude any payment of Taylor's "reasonable legal costs" if Taylor does not prevail on its claims. The trial court offered another reading of paragraph seven, opining that Taylor "is only entitled to recover its attorney fees under the limited circumstance where the defendants enter into possession of the real estate in

violation of this provision without making full payment." On that basis, the trial court found that provision reasonable, given that "substantial detriment may be caused to [Taylor] by the [Benfields'] taking possession without making payment."

{¶ 68} We need not decide whether the trial court's reading of this provision was the correct one. Ohio law in some circumstances permits contractual provisions requiring the losing party in litigation to pay the prevailing party's attorney fees. See *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 514 N.E.2d 702, syllabus. At the least, paragraph seven of the contract may be read so as not to grant Taylor a right to have the Benfields pay its attorney fees if Taylor does not prevail on its claims. In light of the uncertainty of paragraph seven's meaning, we cannot find that paragraph seven's provision for Taylor's attorney fees is so oppressive and one-sided as to "taint" the arbitration clause in paragraph 15 and render it unenforceable. Because the arbitration clause itself is enforceable, the question of the meaning of paragraph seven and its enforceability under Ohio law, like that of other contract terms, will be for the arbitrator in the first instance. Cf., e.g., *Hawkins v. Aid Assn. for Lutherans* (C.A.7, 2003), 338 F.3d 801, 807 (claim that arbitration clause was unconscionable because it limited remedies available to plaintiffs was for arbitrator in the first instance, as the adequacy of arbitration remedies "has nothing to do with whether the parties agreed to arbitrate"). Accordingly, we express no view on the matter.

## III

{¶ 69} For all of these reasons, we hold that a trial court's decision on a motion pursuant to R.C. 2711.02 to stay litigation in favor of arbitration must be reviewed de novo when the issue to be decided is whether the arbitration agreement or clause is unconscionable as a matter of law. The court of appeals erred by determining the issue of unconscionability regarding the parties' entire contract, rather than just the arbitration clause. For the reasons discussed above, we conclude, unlike the court of appeals, that the arbitration agreement is not unconscionable.

{¶ 70} Accordingly, the judgment of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

PFEIFER, J., concurs in part and dissents in part.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 71} The majority opinion states that "[i]n the case before us, the narrow issue is whether the standard of appellate review of an R.C. 2711.02(B) stay order is de novo or for abuse of discretion when the underlying issue is whether the arbitration clause is unenforceable because of alleged unconscionability." ¶ 31. I concur with the conclusion in the majority opinion that "[t]he court of appeals correctly identified de novo as the standard of review for a determination of whether an arbitration agreement is unconscionable and is therefore unenforceable." I dissent, however, from the majority opinion's subsequent conclusion that the trial court "incorrectly applied that standard in this case." ¶ 38. I believe that only the narrow legal issue is before us and that we should not reach beyond that issue to make a factual determination. Because the court of appeals applied the proper standard, I would affirm its decision.

---

Santen & Hughes, J. Robert Linneman, and C. Gregory Schmidt, for appellant.

Nichols, Speidel & Nichols and Donald W. White, for appellees Marvin and Mary Ruth Benfield.

Marc Dann, Attorney General, and Elise Porter, Robert J. Krummen, and Nadine L. Ballard, Assistant Attorneys General, urging affirmance for amicus curiae Ohio Attorney General.