[Cite as *Klonowski v. Merrill Lynch*, 2020-Ohio-4567.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DANIEL J. KLONOWSKI,                    :

    Plaintiff-Appellee,              :

                                 No. 109086

    v.                               :

MERRILL LYNCH, ET AL.,                  :

    Defendants-Appellants.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** September 24, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-914407

---

### *Appearances:*

Paul V. Wolf Co. and Paul V. Wolf, *for appellee.*

McGlinchey Stafford, P.L.L., and Bryan T. Kostura;
Bressler, Amery & Ross, P.C., and Logan S. Fisher,
*for appellant.*

PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. and James R.

Sophia, Jr. (collectively "Appellants") appeal the trial court's denial of their motion

to compel arbitration and stay proceedings and assign the following error for our review:

> I.  Whether the trial court's September 23, 2019 journal entry erred by denying the Motion to Compel Arbitration and Stay Proceedings filed by Defendants/Appellants Merrill Lynch, Pierce, Fenner & Smith Incorporated and James R. Sophia, Jr.

{¶ 2}  On November 12, 2007, Daniel Klonowski ("Klonowski") opened a cash management account with Appellants.  Klonowski, who is an attorney, signed Appellants' Client Relationship Agreement ("the CRA"), which included an arbitration clause.

{¶ 3}  On April 24, 2019, Klonowski filed a complaint against Merrill Lynch alleging promissory estoppel, breach of contract, negligence, and breach of fiduciary duty related to alleged mismanagement of Klonowski's account.  Appellants filed a motion to compel arbitration and stay the proceedings in the trial court.  The trial court held a hearing on August 8, 2019, and denied the motion on September 23, 2019.  It is from this denial that Appellants appeal.

### Appellants' CRA

{¶ 4}  The CRA that Klonowski signed when he opened his account with Appellants is six pages long.  Within these pages, there are two references to arbitration.  First, just above Klonowski's signature, which was required on one page of the CRA, the following language is in bold print:

> BY SIGNING BELOW, I AGREE TO THE TERMS OF THE MERRILL LYNCH CLIENT RELATIONSHIP AGREEMENT ON THE REVERSE SIDE AND:  * * * 2. THAT, IN ACCORDANCE WITH SECTION 8, PAGE 2 OF THE CLIENT RELATIONSHIP AGREEMENT, I AM

AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES THAT MAY ARISE WITH YOU * * *.

**{¶ 5}** Second, Section 8 of the CRA, which is entirely in bold print and is titled "AGREEMENT TO ARBITRATE CONTROVERSIES," states in pertinent part as follows:

> This Agreement contains a predispute arbitration clause. By signing an arbitration agreement, the parties agree as follows: All parties to this Agreement are giving up the right to sue each other in court * * *. The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

> Any arbitration pursuant to this provision shall be conducted only before the New York Stock Exchange, Inc., an arbitration facility provided by any other exchange of which Merrill Lynch is a member, or the National Association of Securities Dealers, Inc. * * *.

**{¶ 6}** Section 8 of the CRA also states that the consumer — in this case, Klonowski — may choose the forum from among those listed, and if the consumer fails to choose, Merrill Lynch will select the forum. Additionally, the CRA states that "[a]rbitration awards are generally final and binding," subject to limited ability for appellate review; "discovery is generally more limited in arbitration than in court proceedings"; "arbitrators do not have to explain the reason(s) for their award"; "[t]he panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry"; arbitrable claims include "those involving any transaction in any of your accounts with Merrill Lynch, or the construction, performance or breach of any agreement between us"; and "Judgment upon the award of arbitrators may be entered in any court, state or federal, having jurisdiction." Furthermore, Section 8 of the CRA notes that time limits for bringing

a claim in arbitration may be imposed and explains the limitations of arbitrating class actions.

## The Motion to Compel Arbitration

{¶ 7} Appellants sought a trial court order compelling Klonowksi to arbitrate his claims pursuant to the CRA and stay his pending complaint. Appellants argued that the parties agreed in the CRA to arbitration as the dispute resolution forum, and Klonowski's claims against Appellants all relate to his account, thus falling within the scope of the arbitration clause.

{¶ 8} Klonowski, on the other hand, argued that he only saw the one page of the CRA with his signature on it, and that page does not have the terms of the arbitration clause on it. Therefore, Klonowski argued, there was no agreement to arbitrate. In his opposition to Appellants' motion to compel arbitration, Klonowski attached an affidavit, which reads in part as follows:

> I executed a one page Merrill Lynch Client Relationship Agreement which is attached hereto as Exhibit "1."
>
> That to the best of my knowledge, the one page Merrill Lynch Relationship Agreement was faxed to me at my law office and the one page document was accompanied by instructions to fill in the agreement by handwriting.
>
> That I supplied information in handwriting on the single page that I believe was faxed to me and signed that one page document on November 12, 20[0]7.
>
> That the one page document that was faxed to me and which I signed did not have a reverse side and the fine print on the one document which I was instructed to sign was in substantial portion illegible and appeared substantially identical to that which is attached hereto as Exhibit "1".

That this was the only page of any agreement with Merrill Lynch that was ever placed before me or otherwise shown to me until I received and read Defendants' Motion to Compel Arbitration and the documents attached hereto.

{¶ 9} In the alternative, Klonowski argued that the provisions in the CRA were procedurally and substantively unconscionable, because they "run afoul of the test set forth in *Cole v. Burns International Security Services,* [105 F.3d 1465 (D.C.Cir.1997)]." Specifically, Klonowski argued that the CRA: does not provide for a neutral arbitrator; is not clear whether more than minimal discovery is permitted; states that the arbitrators do not have to explain the reasons for their award; gives no indication regarding available relief; and exposes him to unreasonable costs.

{¶ 10} In Appellants' reply brief in support of arbitration, they argued that "parties to a contract are presumed to have read the contract and have knowledge of its contents." Appellants provided the court with Klonowski's original ink signature on the CRA showing that the document was, in fact, legible and was not provided to Klonowski via fax. Appellants attached an affidavit from Sophia stating that, while he did "not recall the specific circumstances surrounding [Klonowksi's] account opening process, it was not, and has never been, my business practice to send a client *only* the signature page to a" CRA. (Emphasis sic.) Sophia's affidavit further stated that his

standard operating procedure in connection with client's opening new accounts was to: (i) meet in person with the potential client and have them execute the necessary account documentation at the in person meeting; or (ii) if an in person meeting was not possible, I would mail the entire document(s) to the client for execution and request that the document be returned to me at Merrill.

{¶ 11} Appellants further argued to the trial court that the CRA was not procedurally or substantively unconscionable. First, Appellants pointed out that "*Cole* is a D.C. Circuit case which is not controlling." Second, Appellants argued that there was no absence of meaningful choice, in that Klonowski "could have opened an account with virtually any other brokerage firm if he did not want to agree to the terms of the [CRA]." Third, Appellants argued that the contract terms are not unreasonably favorable to them.

**The Hearing**

{¶ 12} At the hearing on Appellants' motion to compel arbitration, the parties first addressed whether the CRA was enforceable, based on Klonowski's allegation that he only saw the page he signed. Klonowski's attorney argued that "I don't necessarily think that it's his responsibility to ask if there [are] other pages to the * * * [CRA]."

{¶ 13} In response, Appellants' attorney stated as follows:

there is an onus on Mr. Klonwoski based upon the fact he signed the relationship agreement and agreed to these terms, and the fact of the matter is these were not in fine print. These were not hidden someplace in the contract. They're laid out very clearly about what they can and cannot do and the rights and responsibilities for which Mr. Klonowski agreed to pursuant to this contract.

{¶ 14} The court agreed with Appellants as follows: "I agree that the Plaintiff had an obligation if he is signing this and he didn't get all these pages, to say, well, where is the section on arbitration because that is one of the last sentences just above

where he signed." The essence of the court's conclusion was that Klonowski agreed to the CRA in its entirety.

{¶ 15} The parties next argued about whether the CRA was unconscionable, and the court stated the following on the record:

> It says in here that * * * the rules of the arbitration forum in which the claim is filed and any amendments thereto shall be incorporated into this agreement.
>
> Can someone point me to the arbitration forum rules that are incorporated into this agreement, because that's where I see a problem, not with the facts [sic] that [the] arbitration agreement is not — that there is not a section in here that addresses it, but where is the rest of the — where are the rest of the applicable rules here for the arbitration [forum]?

{¶ 16} The court continued: "There [are] choices that he can make as far as which arbitrator he wants to use, but there is no — that's not provided. There is a certain list, but he has to guess as to which arbitrat[ion forum Appellants are] a member of." According to the court, "shouldn't that have been part of the agreement? * * * But under the arbitration provision where it is being incorporated into the agreement, there is no information provided to the person who is being bound by this agreement as to where to go or where to get this list of acceptable arbitrators to choose from."

{¶ 17} Appellants' attorney argued that, if a dispute arose, the consumer could choose the arbitration forum, of which Appellants are members, from those listed in the CRA. Thereafter, "the arbitration rules would be incorporated once the specific forum is chosen. We're not going to choose a forum for the — for Mr. Klonowksi unless he decides not to choose one for himself."

**{¶ 18}** In response, Klonowski's attorney argued that it "would be difficult" for a customer to determine which arbitration forums Appellants were members of and that "the terms itself are very problematic." The remainder of Klonowski's attorney's arguments at the hearing concerned his client allegedly not receiving all of the pages of the CRA.

## Analysis

**{¶ 19}** In its September 23, 2019 journal entry, the court made the following findings when denying Appellants' motion to compel arbitration: "Substantial terms for this arbitration provision are contained in different documents which were never given to plaintiff, shown to plaintiff, or put in front of plaintiff, and thus this arbitration clause is both procedurally and substantively unconscionable."

**{¶ 20}** To support its finding, the court relied on *Jamison v. LDA Builders, Inc.,* 11th Dist. Portage No. 2011-P-0072, 2013-Ohio-2037, a case in which the plaintiffs "entered into a New Home Purchase Agreement with LDA, a seasoned home builder, for the construction of a home * * *." *Id.* at ¶ 2. In *Jamison*, the court found that the arbitration clause at issue was both procedurally and substantively unconscionable when the plaintiff did not receive the arbitration agreement until after signing the contract at issue, the defendant had the right to choose the arbitrator, and the plaintiffs "could obtain a copy of the applicable rules and procedures upon request." *Id.* at ¶ 48.

**{¶ 21}** Upon review, we find that the facts of the case at hand are different than the facts in *Jamison*. In the instant case, the arbitration clause was included in

the document that Klonowski signed on November 12, 2007. Although Klonowski argued that he was only provided with the signature page, therefore, he never agreed to arbitrate, the trial court did not find this argument to be credible. Klonowski's signature is on a page that states he is agreeing to arbitration "in accordance with section 8, page 2" of the CRA. Klonowski is an attorney, and a "party to a contract is presumed to have read and understood the terms and is bound by a contract that he willingly signed." *Michael A. Gerard, Inc. v. Haffke*, 8th Dist. Cuyahoga No. 98488, 2013-Ohio-167, ¶ 19. Furthermore, Klonowski had the right to choose an arbitrator from a finite list, and the applicable arbitration rules were incorporated by reference.

## Standard of Review for a Motion to Compel Arbitration

{¶ 22} "[A]lthough arbitration is encouraged as a method to settle disputes, an arbitration clause is not enforceable if it is found to be unconscionable." *Felix v. Ganley Chevrolet, Inc.,* 8th Dist. Cuyahoga Nos. 86990 and 86991, 2006-Ohio-4500, ¶ 15. The Ohio Supreme Court has held that "the proper standard of review of a determination of whether the arbitration agreement is enforceable in light of a claim of unconsionability is de novo, but any factual findings of the trial court must be accorded appropriate deference." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 2.

{¶ 23} In the case at hand, the trial court found in its journal entry that the CRA was unconscionable, because "substantial terms" of the arbitration clause were not part of the CRA that Klonowski signed. Although the court did not explain what

"substantial terms" it was referring to, we glean from the record, and particularly the motion hearing, that the trial court deemed substantial the fact that the specific arbitration organization, along with its rules and procedures, is not identified in the CRA. Rather, a list of acceptable arbitration organizations is provided, the consumer has the option to choose from the list, and the chosen organization's particular rules are "incorporated by reference" into the CRA.

{¶ 24} Giving deference, as we must, to the trial court's factual finding that the specific rules and procedures of the arbitration forum to be chosen were "never given to plaintiff, shown to plaintiff, or put in front of plaintiff," we find no error here. However, we review whether these facts are unconscionable under a de novo standard.

{¶ 25} Upon review, we find no authority to support the trial court's finding that the CRA in this case is unconscionable. "Unconscionability includes both 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." (Citations omitted.) *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34.

{¶ 26} In the case at hand, the court made no finding under the first prong of the *Taylor* test regarding procedural unconscionability. In *Olah v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga No. 86132, 2006-Ohio-694, ¶ 16 (quoting

*Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 268 (E.D.Mich. 1976)), this court held the following:

> Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, e.g., age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.

{¶ 27} Upon review, we find no evidence that Klonowski was under pressure to open an account with Appellants and no evidence that he could not open an account elsewhere. The CRA is legible, clear, unambiguous, and Klonowski signed it. The references to arbitration are in bold print. Klonowski presented no evidence that he was a "weak" party in this transaction. Indeed, Klonowski is an attorney whose education and experience should render him able to read and understand the language in the CRA.

{¶ 28} Turning to the second prong of the *Taylor* test, Ohio courts have held that substantive unconscionability "involves those factors which relate to the contract terms themselves and whether they are commercially reasonable." *Collins v. Click Camera & Video*, 86 Ohio App.3d. 826, 834, 621 N.E.2d 1294 (2d Dist.1993). These factors may include: "the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Id.*

{¶ 29} Klonowski, who bears the burden to show unconscionability, has failed to set forth any evidence or legal authority supporting the argument that the

terms in the CRA are commercially unreasonable. He argues that the CRA "offers absolutely no guidance whatsoever as to even a brief outline of the type of rules that would apply" to an arbitration. He further argues that "it is absolutely irrelevant that hypothetical rules that apply to several fora, one of which no longer even exists, are purported to be incorporated by reference."

{¶ 30} Contrary to Klonowski's argument, the CRA offers some guidance as to the parameters of arbitration and then incorporates by reference the particular rules of the chosen forum. This court has upheld arbitration clauses that are substantially similar to the one at issue. In *Melia v. OfficeMax N. Am., Inc.,* 8th Dist. Cuyahoga No. 87249, 2006-Ohio-4765, the trial court granted a motion to stay pending arbitration, and this court affirmed. The arbitration clause at issue incorporated by reference the arbitration rules of the chosen forum.

> [I]t is commonplace for arbitration agreements to incorporate the [American Arbitration Association] rules. The mere fact that an agreement incorporates the rules does not make it invalid. Rather, the complaining party must be able to specifically cite to, and demonstrate how, a specific provision in the [American Arbitration Association] rules renders the Agreement invalid. * * * We therefore find that Melia's contention that the incorporation of the [American Arbitration Association] rules invalidates the Agreement to be without merit."

*Id.* at ¶ 36-37. *See also Conte v. Blossom Homes L.L.C.,* 8th Dist. Cuyahoga No. 103751, 2016-Ohio-7480.

{¶ 31} Additionally, this court reversed the trial court's denial of a motion to compel arbitration under circumstances strikingly similar to the facts of the case at hand. In *Estate of Brewer v. Dowell & Jones, Inc.,* 8th Dist. Cuyahoga No. 80563,

2002-Ohio-3440, the plaintiffs opposed arbitration "on the grounds they did not receive or review the 'Customer Agreement' containing the arbitration clause at the time they opened their Fidelity account * * *." This court found that the plaintiffs agreed to arbitration.

> Here, Fidelity had a standard account application and customer agreement which all of its customers received and were required to sign prior to opening a new brokerage account. * * *
>
> The Customer Agreement containing the arbitration provision is specifically identified and incorporated, in bold type-face print, in the New Account Application.
>
> Plaintiffs claim that they did not have knowledge of and failed to receive the incorporated Customer Agreement containing the arbitration clause and thus, did not understand that they were bound to arbitrate all disputes with Fidelity. Plaintiffs also state that they did not read the Fidelity application containing the incorporated clause. These arguments must fail.
>
> First, physical delivery of a contract is not essential to create a legally enforceable agreement. * * * Where the parties intend to be bound by the contract, it is valid, even where a party later claims that he never received a copy of the agreement.
>
> * * *
>
> A party entering a contract has a responsibility to learn the terms of the contract prior to agreeing to its terms. The law does not require that each aspect of a contract be explained orally to a party prior to signing it. * * * 'It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written.'"

(Citations omitted.) *Id.* at ¶ 8-13.

{¶ 32} In the instant case, the court erred as a matter of law by finding that the CRA is both procedurally and substantively unconscionable. Appellants' sole assigned error is sustained. The trial court's denial of Appellants' motion to compel

arbitration and stay proceedings is reversed, and this case is remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
RAYMOND C. HEADEN, J., CONCUR