{¶ 1} Plaintiff-appellant, Courtyards of Crystal Lake Homeowners Association, appeals the trial court's judgment, rendered after a bench trial, in favor of defendant-appellee, Debra Bradesca. We affirm.
 {¶ 2} The central issue in this case revolves around Bradesca's ownership of a dog while residing in the Courtyards' subdivision. The record before us demonstrates that on October 13, 2004, Bradesca was granted a warranty deed for the premises at 15583 Foxglove Lane, Middleburg Heights, Ohio. The property is part of a master association known as the Greens at Misty Lake Homeowners Association, and a sub-association known as the Courtyards of Crystal Lake Homeowners Association. It is undisputed that Bradesca was the initial owner of the property.
 {¶ 3} The master and sub-associations are governed by separate declarations of covenants, conditions, and restrictions, and the warranty deed provides that both declarations govern the homeowners. Both declarations have provisions relating to the ownership of pets. The Greens' declarations, as adopted by amendment in August 1997, [1]
provide:
 {¶ 4} "Section 14. Except as hereinafter provided, no dogs shall be permitted in any Living Unit except dogs owned by the initial Owner of any Living Unit where such Owner had the dog at the time of the purchaseof such Living Unit; provided, however, upon the death or loss of any such permitted *Page 4 
dog, the Owner may not replace such a dog." (Underline in original.) (Italics added.)
 {¶ 5} Neither the Greens' original nor amended declarations provided for the imposition of fees or fines for a violation thereof.
 {¶ 6} The Courtyards' declarations, as created in March 1998, provide:
 {¶ 7} "ARTICLE XII RESTRICTIONS The following restrictions are inaddition to the General Restrictions As To The Properties contained inArticle VII of the Greens Declaration * * *
 {¶ 8} "* * *
 {¶ 9} "Section 3. Animals and Pets. No animals * * * shall be * * * kept on any portion of the Courtyards of Crystal Lake Area, except that * * * one (1) dog owned by the initial Owner of a Unit shall be permitted; provided, however, upon the death or loss of any such permitted dog, the dog may not be replaced. No pets are permitted to roam free; those which, in the sole discretion of the Board, endanger the health, make objectionable noise or odors, or constitute a nuisance or inconvenience shall be removed upon request of the Board; and if the Owner fails to honor such request, the animal may be removed by the Board. * * * Dogs or cats which are household pets shall at all times whenever they are outside be confined on a leash by a responsible person." (Italics added.) (Bold and underline in original.) *Page 5 
 {¶ 10} The Courtyards' declarations also provide that it may impose "reasonable fines not to exceed $75 for each violation of any duty imposed under the declarations[,]" and that the association may place a lien on a violating owners' property for unpaid fees or fines.
 {¶ 11} The Courtyards' Handbook of Rules and Regulations, adopted March 2006, provides in relevant part the following regarding pets:
 {¶ 12} "VIII PETS * * * (3) One (1) dog may be owned by the Initial Owner of a home, and registered with the Association as of 2/1/06; however, upon the death or loss of the permitted dog, the dog may not be replaced." (Bold and underline in original.)
 {¶ 13} At trial, Bradesca testified that prior to purchasing the property she had contracted with a breeder for a Boxer dog. She further testified that her dealings in purchasing the property were with the developer, Gross Builders. Bradesca inquired of the builder's agent whether, given that she would be a member of a homeowners' association, she would be allowed to own a dog. Bradesca testified that the agent assured her that she could have a dog as long as she made her intent known on a form she filled out as part of the purchase transaction.[2] *Page 6 
 {¶ 14} The entire litter from which Bradesca had contracted for a puppy was stillborn. Bradesca and the breeder agreed that she would get a puppy from the breeding dog's next litter. Bradesca got the Boxer puppy approximately four months after she moved into her home. Bradesca admitted that she had another dog temporarily living with her for a period of time in 2005. She explained that the dog belonged to her mother, and because of a family emergency, she dog-sat for awhile.
 {¶ 15} The two witnesses for the association, the property manager and a board member, testified that there were numerous complaints by residents about the dogs. The manager testified that several written complaints were received, but she had only one of them, which was a complaint that was written after this action was initiated.[3] The manager also testified that many complaints were received over the phone. A log of the calls the manager created as a result of the litigation was not admitted into evidence.
 {¶ 16} The board member testified that the Boxer would come in her yard and bother her cat that was contained in a screened-in porch. The board member also testified that other residents complained to her about the dogs, but she had no documentation of the complaints.
 {¶ 17} The complaints, as testified to by both witnesses, purportedly were that the dogs were not leashed, ran loose, and relieved themselves on other *Page 7 
people's property. As a result of the complaints, the association's management company sent several letters to Bradesca informing her that only one dog was allowed. Bradesca never responded to the letters; she claimed she never received them. Eventually, a letter of notice was mailed to Bradesca (she claimed she never received it), advising that a hearing was scheduled "so you may provide the Board with your information and supporting evidence as to the two dogs which occupy your home." Bradesca was not present at the meeting. A letter was subsequently sent to her stating in pertinent part the following:
 {¶ 18} "At the meeting it was discussed and documented that you are in possession of two dogs, a small white dog and larger multi colored dog that roam freely, unleashed and the dog waste is not cleaned on a regular basis. It was further documented that the Association's governing documents state[ ] that original owners are permitted one dog and must be leashed and held by a responsible person when outside the unit and must immediately clean up after their pet.
 {¶ 19} "The Board reviewed all documented complaints and supporting information and voted to require you to remove one of the dogs from the property by March 31, 2006 and a fine not to exceed $50 per occurrence may be imposed any and all times it is reported and documented that you have your remaining dog outside of the unit unleashed and the dog waste is not immediately cleaned." *Page 8 
 {¶ 20} The letter also included an "acknowledgment of compliance" form that the association asked Bradesca to sign. The acknowledgment sought on the form was that Bradesca had "complied with the governing provisions of the Courtyards of Crystal Lake Homeowners Association and the Greens at Misty Lake Master Association regarding the dog restriction and [had] removed ONE of the dogs in [her] possession from the association premises." (Capitalization in original.)
 {¶ 21} In its judgment, the trial court found that the Greens' declarations and the Courtyards' declarations conflicted regarding owning a dog. Because of the conflict, the court declined to read them in pari materia, as urged by the Courtyards. The court also declined to apply the Greens' declarations over the Courtyards' declarations, "since that would require a conclusion that the dog provisions of [the Courtyards], enacted almost a year after the dog provision amendment to [the Greens'] declarations, were merely surplus verbiage." Instead, the court found that the Greens' 1997 restriction was "eased" by the Courtyards' 1998 restriction.
 {¶ 22} The court further found that Bradesca did not own the Boxer at the time she purchased the property and, therefore, was in violation of the Greens' declarations, but not the Courtyards' declarations. The court also found that the Boxer did not constitute a nuisance under the Courtyards' declarations. Finally, *Page 9 
the court held that the Courtyards was not entitled to costs and attorney fees against Bradesca.
 {¶ 23} In its first and second assignments of error, the Courtyards challenges the trial court's determination that the two declarations conflicted and that the Courtyards' restriction "eased" the Greens' restriction.
 {¶ 24} The construction of a written contract is a question of law, which we review de novo. Continental W. Condominium Unit Owners Assn. v.Howard E. Ferguson, Inc., 74 Ohio St.3d 501, 502, 1996-Ohio-158,660 N.E.2d 431; Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,73 Ohio St.3d 107, 108, 1995-Ohio-214, 652 N.E.2d 684; Alexander v. Buckeye PipeLine Co. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. In construing the terms of a written contract, the primary objective is to give effect to the intent of the parties, which we presume rests in the language that they have chosen to employ.Saunders v. Mortensen, 101 Ohio St.3d 86, 2004-Ohio-24, at ¶ 9,801 N.E.2d 452, citing Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus
 {¶ 25} The Courtyards argues that the trial court incorrectly concluded that the two declarations were in conflict. We agree. A conflict is defined as a "competitive or opposing action of incompatibles: antagonistic state or action (as of divergent ideas, interests, or persons)." Webster's New Collegiate Dictionary (1973) 235. The terms of the two declarations are not opposing or antagonistic to *Page 10 
each other — they both allow initial owners to have dogs. The Greens' declarations, however, limits such ownership to instances where the owner had the dog when she purchased her home. The Courtyards' declarations, on the other hand, places no such restriction on initial owners — it is silent as to when an initial owner would have had to obtained a dog. Thus, the two declarations are not incompatible.
 {¶ 26} Because there is no conflict between the two declarations on the issue of dog ownership, the trial court properly found that the Greens' declarations should not prevail.[4] (The trial court based its finding on another reason, that being, that the Courtyards' declarations would be "merely surplus verbiage.")
 {¶ 27} Although we find that the two declarations do not conflict, we disagree with the Courtyards' argument that because there is no conflict, they must be read in pari materia, and that such a reading would demonstrate that Bradesca was not permitted to have the Boxer. Although the Courtyards' declarations provide that its "restrictions are in addition to the `General Restrictions As To The Properties' Contained in Article VII of the Greens *Page 11 
Declarations," under the facts and circumstances of this case, we find that the Courtyards waived its right to have the two declarations read in pari materia.
 {¶ 28} Specifically, we note that on the issue of dog ownership, the Courtyards' declarations, which were the more recent of the two declarations, mirrored in part the Greens' declarations (both provided that upon the death or loss of a permitted dog, it may not be replaced), and also expanded upon the Greens' declarations (the Courtyards' declarations addressed other animals/pets, specifically stated only one dog was allowed, banned animals for commercial purposes, and provided restrictions for pets, a violation of which could be deemed to constitute a nuisance). If the association sought to limit dog ownership to initial owners who had their dog at the time of the purchase of their home, it would have included that restriction in its more recent Courtyards' declarations.
 {¶ 29} We find that the provision in the Courtyards' declarations that the "restrictions are in addition to the `General Restrictions As To The Properties' Contained in Article VII of the Greens Declarations," references other issues. In particular, Article VII of the Greens' declarations address several restrictions not addressed by Article XII of the Courtyards' declarations: outdoor clothes lines, machinery, fences/walls (sections four, five, and six, respectively), dumping on the owners' property and dumping in the lake (sections seven and 11, respectively), motorized vehicles on sidewalks (section ten), above ground *Page 12 
swimming pools (section 13), storm water retention (section 15), and multi-family rental units (section 16).[5]
 {¶ 30} Our finding that the previous requirement regarding the timing of dog ownership was eliminated is also supported by the Crystal Lake Homeowners Association Handbook, the most recent of all the documents (adopted in March 2006) on the issue of dog ownership. Specifically, the handbook did not place a timing restriction on dog ownership.
 {¶ 31} Moreover, a review of the correspondence sent by the Courtyards to Bradesca, with one exception, [6] does not term the problem ashaving a dog, that is, that she did not have the dog when she moved into her home. Rather, the letters term the problem as being one or a combination of the following: two dogs being on the property, the dog(s) not being leashed, the dog(s) being left unattended, and the dog(s) not being cleaned up after.[7] *Page 13 
 {¶ 32} Thus, we find that the two declarations did not conflict, agree with the trial court that the two declarations should not be read in pari materia, and conclude that the Greens' declaration was "eased" by The Courtyards' declaration. The first and second assignments of error are overruled.
 {¶ 33} In its third assignment of error, the Courtyards contends that the trial court erred by finding that the Boxer did not constitute a nuisance. In resolving this issue, we decide whether the trial court's application of the Courtyards' declarations to its factual findings constituted an abuse of discretion. See Taylor Bldg. Corp. of Am. v.Benfield, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12. An abuse of discretion is more than an error of judgment. Instead, it means that the trial court's ruling was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, we may not substitute our judgment for that of the trial court. Pons v. Ohio State Med.Bd., 66 Ohio St.3d 619, 621, 1993-Ohio-122, 614 N.E.2d 748.
 {¶ 34} On the nuisance issue, the trial court found that although "[t]here is some evidence * * * that the defendant is not a responsible dog owner[,] * * * it appears that the association was willing to tolerate some of these offenses when it agreed * * * to allow some dogs in the first place, and then when it cited [Bradesca] only for having multiple dogs, not for [the Boxer's] specific bad habits." The court went on to find that "the evidence was insufficient to show *Page 14 
that the dog currently constitutes a nuisance as defined in Article XII, Section 4 of the restrictions[, but that it] remains subject to being removed as a nuisance upon proper evidence and upon a proper procedure under the declarations and by-laws[.]"
 {¶ 35} Article XII, Section 4 of the declarations provides, in relevant part, the following:
 {¶ 36} "There shall not be maintained any * * * animals * * * whose activities or existence in any way is noxious, dangerous, unsightly, unpleasant, or of a nature as may diminish or destroy the enjoyment or value of the Courtyards of Crystal Lake Area."
 {¶ 37} The Courtyards' handbook requires that all complaints be in writing and signed by the resident. The property manager and a board member testified that there were numerous complaints by the residents about the dog(s), but the written complaints were not produced (except for one which was written after this action had been filed and was not admitted into evidence). Further, the complaints which were received over the phone, and reduced to a log by the manager were not admitted into evidence.
 {¶ 38} On this record, we do not find that the trial court abused its discretion by finding that the Courtyards did not present sufficient evidence to demonstrate that the Boxer was a nuisance as defined in Article XII, Section 4 of its declarations. The third assignment of error is overruled. *Page 15 
 {¶ 39} Finally, given our resolution of the other assignments of error, we find that the trial court did not err by holding that the Courtyards was not entitled to collect costs and attorney fees for the alleged violation of its declarations. The fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] The original 1987 declarations did not mention pets.
[2] Bradesca testified that she gave the form to a Courtyards agent and did not have a copy of it; Courtyards was unaware of the form and, therefore, it was not produced at trial.
[3] The trial court did not admit that complaint into evidence.
[4] Article I, Section 17 of the Courtyards' declarations provides that "[i]n the event of any conflict between the provisions of this Declaration and the Greens at Misty Lake Declaration, the provisions of the Greens at Misty Lake Declaration shall control."
[5] On all of the issues, including animals, that both declarations address, the Courtyards' declarations somehow modify or expand the Greens' declarations.
[6] A March 21, 2005 letter to Bradesca from the Association states that "[i]f you acquired the dog and were not a dog owner at the time of purchase, you are in violation of the Declaration of Covenants, Conditions and Restrictions and you are required to remove the dog from the property immediately." We note that although the letter references both declarations, enclosed as the only attachment was a portion of the Courtyards' declarations, which as already discussed, does not contain a timing restriction. Moreover, the portion which was enclosed was the section governing animals and pets, and not the portion that stated that the restrictions were in addition to the restrictions in the Greens' declarations.
[7] The letters detailing these problems were dated September 13, 2005, December 1, 2005, December 14, 2005, February 16, 2006, March 20, 2006, and June 19, 2006. *Page 1