**HAYES; MUSSER, EXR., APPELLEE, *v*. THE OAKRIDGE HOME,**

**APPELLANT, ET AL.**

[Cite as *Hayes v. Oakridge Home,* 122 Ohio St.3d 63, 2009-Ohio-2054.]

*Contracts — Arbitration — Nursing home — Arbitration agreement voluntarily executed by nursing-home resident upon her admission and not as a precondition to admission is not rendered procedurally unconscionable solely due to resident's age — Arbitration agreement that waives right to trial and right to recover punitive damages and attorney fees is not substantively unconscionable.*

(No. 2008-0784 — Submitted February 4, 2009 — Decided May 7, 2009.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 89400, 175 Ohio App.3d 334, 2008-Ohio-787.

_____

**SYLLABUS OF THE COURT**

1.  An arbitration agreement voluntarily executed by a nursing-home resident upon her admission and not as a precondition to admission is not rendered procedurally unconscionable solely by virtue of the resident's age.

2.  An arbitration agreement voluntarily executed by a nursing-home resident and not as a precondition to admission that waives the right to trial and the right to seek punitive damages and attorney fees is not substantively unconscionable.

_____

**O'CONNOR, J.**

{¶ 1} This case concerns the enforceability of an arbitration agreement entered into between a nursing home and its resident. Appellee Florence Hayes[1]

_____

1. Hayes died in February 2007, and Stephen Musser, executor of her estate, has replaced her as appellee in this appeal.

asserts that the arbitration clause was procedurally and substantively unconscionable, and she would have us fashion a rule that disfavors arbitration agreements between a nursing home and its resident. Conversely, appellant The Oakridge Home, a nursing home,[2] contends that an arbitration agreement cannot be set aside as procedurally unconscionable based only on the resident's age. Oakridge further argues that the inclusion of terms in an arbitration agreement waiving the right to trial and the right to seek punitive damages and attorney fees is not a basis for a finding of substantive unconscionability.

{¶ 2} For the following reasons, we hold that an arbitration agreement voluntarily executed by a nursing-home resident upon her admission and not as a precondition to admission is not rendered procedurally unconscionable solely by virtue of the resident's age. We further hold that an arbitration agreement voluntarily executed by a nursing-home resident and not as a precondition to admission that waives the right to trial and the right to seek punitive damages and attorney fees is not substantively unconscionable. We therefore reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

## I. Relevant Background

{¶ 3} On May 31, 2005, Hayes was admitted to Oakridge. She was 95 years old at the time of her admission. Upon her admission, Hayes signed an arbitration agreement whereby she agreed to submit any future malpractice claims against Oakridge to arbitration and to waive her right to trial and her right to recover punitive damages and attorney fees.

{¶ 4} The arbitration agreement states at the top in boldface capital letters that it is a voluntary agreement. In capital letters just below the heading, it instructs the resident to "please read carefully." Section I of the agreement explains the benefits and the drawbacks of the arbitration process and

---

2. "Nursing home" is being used in place of the more formal term "long-term care facility" or "skilled nursing facility."

reemphasizes that the arbitration agreement is optional. Section III of the agreement again specifies that "execution of this Arbitration Agreement is voluntary" and states that execution "is not a precondition to receiving medical treatment at or for admission to the Facility." The voluntariness of the parties' consent is again stated in boldface capital letters at the end of the agreement, immediately above the signature lines.

{¶ 5} The arbitration agreement states that by executing the agreement, the parties are giving up their constitutional right to a jury trial. Section II provides that the parties must pay their own attorney fees and that any arbitration award shall not include any amount for exemplary or punitive damages.

{¶ 6} The agreement also contains the following "acknowledgments":

{¶ 7} 1. The resident has been informed and acknowledges that the arbitration agreement cannot be submitted to the resident for approval when the resident's condition prevents her from making a rational decision on whether or not to agree;

{¶ 8} 2. The resident understands that she has a right to consult with an attorney of her choice before signing the agreement; and

{¶ 9} 3. The resident understands, agrees to, and has received a copy of the arbitration agreement, acknowledges that the terms have been explained to her by an agent of the facility, and acknowledges that she had the opportunity to ask questions about the arbitration agreement.

{¶ 10} Hayes and a representative of Oakridge both signed the arbitration agreement on the day she was admitted to the nursing home.

{¶ 11} Hayes filed this action in the Cuyahoga County Court of Common Pleas alleging that she had suffered injuries from a fall while she was a resident at Oakridge and that the fall was the direct and proximate result of the negligence and/or recklessness of Oakridge and/or its agents. Oakridge moved to stay the proceedings pursuant to R.C. 2711.02 on the grounds that Hayes's allegations

were covered by the arbitration agreement entered into between the parties. The trial court granted Oakridge's motion to stay and ordered that all claims were to be resolved pursuant to the parties' voluntary arbitration agreement.

{¶ 12} Hayes appealed to the Eighth District Court of Appeals. She argued that the trial court's judgment was erroneous because the arbitration agreement was procedurally and substantively unconscionable. Oakridge countered that there was no evidentiary basis for a finding of procedural or substantive unconscionability.

{¶ 13} A divided court of appeals held that the arbitration agreement was both procedurally and substantively unconscionable. *Hayes v. Oakridge Home*, 175 Ohio App.3d 334, 2008-Ohio-787, 886 N.E.2d 928, ¶ 6. The appellate court found that the arbitration agreement was substantively unconscionable because it took away Hayes's rights to attorney fees, punitive damages, and a jury trial. Id. at ¶ 15 and 18. The court of appeals also ruled that the arbitration agreement was procedurally unconscionable because Hayes was a 95-year-old woman with no business or contract experience, and Oakridge had all the bargaining power. Id. at ¶ 19. The court further held that no one had explained the terms to Hayes, and there were no alternatives for her because finding a quality nursing home is difficult. Id.

{¶ 14} Oakridge appealed to this court, and we accepted jurisdiction to address two issues: (1) whether a nursing-home resident's age can render an arbitration agreement executed by the resident procedurally unconscionable and (2) whether an arbitration agreement that waives a nursing-home resident's right to trial and to recover punitive damages and attorney fees is substantively unconscionable. *Hayes v. Oakridge Home*, 119 Ohio St.3d 1407, 2008-Ohio-3880, 891 N.E.2d 768. We answer both questions in the negative.

## II. Analysis

4

**{¶ 15}** Both the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration. R.C. Chapter 2711; *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27; *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859. As this court has stated, " '[A]rbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute.' " *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 712, 590 N.E.2d 1242, quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 83, 22 OBR 95, 488 N.E.2d 872. Arbitration also has the additional benefit of unburdening crowded court dockets. *Mahoning Cty. Bd. of Mental Retardation,* 22 Ohio St.3d at 83, 22 OBR 95, 488 N.E.2d 872. In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor. *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 18.

**{¶ 16}** The General Assembly has endorsed the strong policy in favor of arbitration of disputes in R.C. 2711.01(A), which provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."

**{¶ 17}** R.C. 2711.02 provides for the enforcement of an arbitration agreement. A party to such an agreement may obtain a stay of litigation in favor of arbitration under R.C. 2711.02(B), which provides:

**{¶ 18}** "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has

been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration."

{¶ 19} As noted above, an arbitration agreement is enforceable unless grounds exist at law or in equity for revoking the agreement. R.C. 2711.01(A). Unconscionability is a ground for revocation of an arbitration agreement. *Taylor Bldg.,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 33. In *Taylor,* we recently explained unconscionability in this context as follows:

{¶ 20} "Unconscionability includes both ' "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' *Lake Ridge Academy v. Carney* (1993), 66 Ohio St.3d 376, 383, 613 N.E.2d 183, quoting *Williams v. Walker-Thomas Furniture Co.* (C.A.D.C.1965), 350 F.2d 445, 449; see also *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294. The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable. See generally *Ball v. Ohio State Home Servs., Inc.,* 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, ¶ 6; see also *Click Camera,* 86 Ohio App.3d at 834, 621 N.E.2d 1294, citing White & Summers, Uniform Commercial Code (1988) 219, Section 4-7 ('One must allege and prove a "quantum" of both prongs in order to establish that a particular contract is unconscionable')." *Taylor Bldg.,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34.

{¶ 21} Upon appeal of a determination of whether an arbitration agreement is enforceable in light of a claim of unconscionability, the reviewing court employs a de novo standard of review. Id., 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 37.

*A. Procedural Unconscionability*

{¶ 22} We first address the issue of whether a nursing-home resident's age, standing alone, renders an arbitration agreement executed by the resident procedurally unconscionable. We find that it does not.

{¶ 23} In determining whether an arbitration agreement is procedurally unconscionable, courts consider "the circumstances surrounding the contracting parties' bargaining, such as the parties' ' "age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question." ' " (Ellipses sic.) *Taylor Bldg.,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 44, quoting *Collins v. Click Camera*, 86 Ohio App.3d at 834, 621 N.E.2d 1294, quoting *Johnson v. Mobil Oil Corp.* (E.D.Mich.1976), 415 F.Supp. 264, 268.

{¶ 24} Additional factors that may contribute to a finding of procedural unconscionability include the following: " 'belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors.' " *Taylor Bldg.,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 44, quoting Restatement of the Law 2d, Contracts (1981), Section 208, Comment d.

{¶ 25} In finding the arbitration agreement procedurally unconscionable, the court of appeals erroneously relied upon facts not in the record, a practice that the dissent has adopted as well. These purported facts include the following: (1) Hayes lacked any business or contract experience, (2) no one explained the terms of the agreement to Hayes, including the fact that she could alter the agreement, (3) the rescission clause was buried among a myriad of terms, and she was

required to fill out numerous other forms at the same time, and (4) there were no alternative sources of supply because finding a quality nursing home is difficult. *Hayes v. Oakridge Home*, 175 Ohio App.3d 334, 2008-Ohio-787, 886 N.E.2d 928, ¶ 19.

{¶ 26} The only facts in evidence in this case pertaining to procedural unconscionability are Hayes's age and the terms contained in the agreement she signed. Contrary to the court of appeals' and Hayes's assertions, there is no evidence in the record regarding Hayes's educational background, business acumen, or experience.

{¶ 27} As the party challenging the enforceability of the arbitration agreement, it was Hayes's burden to come forward with evidence supporting her challenge. She did not satisfy that burden. Indeed, the paucity of any evidence in support of her claims is notable.

{¶ 28} The agreement clearly delineated in several places that it was voluntary and not a condition of her admission to Oakridge. Further, by signing the agreement, Hayes acknowledged that she understood its terms, that an agent of Oakridge explained those terms to her, and that she had the opportunity to ask questions and consult with an attorney before signing. Moreover, the arbitration agreement was a free-standing document and was not simply a clause obscured within a lengthy contract.

{¶ 29} Hayes's age, in and of itself, is not a sufficient basis for finding the agreement procedurally unconscionable. The presence or absence of any single factor is generally insufficient for such a finding. Thus, we need not consider whether finding an arbitration agreement procedurally unconscionable solely on the basis of a party's age would infringe on the right to contract in violation of the United States and Ohio Constitutions and would violate this court's duty to defend the right to private contract. See Section 10, Clause 1, Article I, United States Constitution; Section 28, Article II, Ohio Constitution; *Farmers Natl. Bank*

*v. Delaware Ins. Co.* (1911), 83 Ohio St. 309, 330, 94 N.E. 834 (this court must guard the constitutional right of private contract "zealously"). Our citizens do not lose their constitutional rights and liberties simply because they age.

{¶ 30} All of the factors must be examined and weighed in their totality in determining whether an arbitration agreement is procedurally unconscionable. These findings must be considered in tandem with the analysis on substantive unconscionability. A party challenging an arbitration agreement must prove a quantum of both procedural and substantive unconscionability. *Taylor Bldg.,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34.

{¶ 31} We therefore find that a voluntary arbitration agreement executed by a nursing-home resident upon her admission is not rendered procedurally unconscionable solely by virtue of the resident's age.

*B. Substantive Unconscionability*

{¶ 32} The second issue for our consideration is whether an arbitration agreement that waives a nursing-home resident's right to trial and the right to seek punitive damages and attorney fees is substantively unconscionable. The court of appeals held that because the arbitration agreement required Hayes to forgo her legal rights to a jury trial, punitive damages, and attorney fees, the agreement is substantively unconscionable. We disagree.

{¶ 33} An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable. *John R. Davis Trust 8/12/05 v. Beggs*, 10th Dist. No. 08AP-432, 2008-Ohio-6311, ¶ 13; *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.* (1996), 113 Ohio App.3d 75, 80, 680 N.E.2d 240. Factors courts have considered in evaluating whether a contract is substantively unconscionable include the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability. *John R. Davis Trust* at ¶ 13; *Collins v. Click Camera*, 86

Ohio App.3d at 834, 621 N.E.2d 1294. No bright-line set of factors for determining substantive unconscionability has been adopted by this court. The factors to be considered vary with the content of the agreement at issue.

{¶ 34} The terms of the arbitration agreement between Hayes and Oakridge are commercially reasonable. With regard to the parties' agreement to forgo the right to trial, this court has already ruled that such an agreement is commercially reasonable. In fact, as this court noted in *Taylor Bldg.* waiver of the right to trial by jury is a necessary consequence of agreeing to have an arbitrator decide a dispute, and this aspect of an arbitration clause is not substantively unconscionable. Id., 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 55. We follow that holding today.

{¶ 35} The provisions in the agreement by which the parties waive their right to seek punitive damages and attorney fees are also commercially reasonable. Both parties must bear their own attorney fees and costs under the agreement, which is equitable to both parties. This provision is not one-sided or oppressive. We therefore find that the provision of the arbitration agreement eliminating both parties' ability to recover attorney fees is not commercially unreasonable.

{¶ 36} Although the relinquishment of the right to seek punitive damages applies only to Hayes, that fact alone does not render the provision commercially unreasonable. The fact that a contractual provision is one-sided does not render it substantively unconscionable per se. By entering into the arbitration agreement, Oakridge also waived statutory legal rights that apply only to Oakridge.

{¶ 37} For example, Oakridge waived its legal right under R.C. 2323.42 to seek court costs and attorney fees. Under R.C. 2323.42, defendants in a medical claim can recover all court costs and reasonable attorney fees if the court determines that there was no reasonable good-faith basis for the plaintiff's claim

10

or that, at some point during the litigation, the plaintiff lacked a good-faith basis for continuing to assert that claim.

{¶ 38} In addition, Oakridge also waived its legal right to pursue an action for filing a groundless complaint under R.C. 2323.51 and Civ.R. 11, which, if successful, could entitle Oakridge to recover expenses and attorney fees.

{¶ 39} Finally, Oakridge waived its right to seek a dismissal of Hayes's action for failure to comply with Civ.R. 10(D)(2). See *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, paragraph one of the syllabus (holding that in a medical claim, a motion to dismiss is the appropriate response to a plaintiff's failure to file an affidavit of merit under Civ.R. 10(D)(2)). At the time this action was stayed by the trial court, Oakridge had filed a motion to dismiss Hayes's complaint on the grounds that she failed to comply with Civ.R. 10(D)(2). The trial court ruled that Oakridge's motion to dismiss was rendered moot by virtue of the stay.

{¶ 40} As outlined above, both parties relinquished legal rights by agreeing to arbitration. Hayes gave up her right to seek punitive damages, and Oakridge in turn gave up its right to seek legal costs, attorney fees, and an outright dismissal of the case. The critical factor herein is that Hayes voluntarily agreed to these terms and was not forced to agree. She had the opportunity to reject a waiver of punitive damages or any of the other terms.

{¶ 41} For all of the foregoing reasons, we find that terms in an arbitration agreement between a nursing home and its resident that eliminate the right to trial and the right to seek punitive damages and attorney fees are not substantively unconscionable.

*C. Contractual Consideration*

{¶ 42} Although the issue of contractual consideration was not raised by Oakridge's propositions of law, we feel compelled to briefly address this issue in light of the court of appeals' holding. The appellate court held that the arbitration

agreement was invalid for lack of consideration on the grounds that Hayes gave up her right to trial and received nothing in return. *Hayes v. Oakridge Home*, 175 Ohio App.3d 334, 2008-Ohio-787, 886 N.E.2d 928, ¶ 20. We disagree.

**{¶ 43}** The waiver of the right to a jury trial is a necessary consequence of agreeing to arbitration and is not unconscionable. *Taylor Bldg.,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 55. Under the court of appeals' opinion, every arbitration agreement would lack consideration and be rendered invalid. Such a result defies the strong policy favoring arbitration of disputes and the long-standing recognition of arbitration agreements as valid instruments. Both parties gave up their right to trial, as well as all correlating rights in the judicial process as discussed above. Moreover, Hayes was not required to sign the agreement, and it was unequivocally not a condition of her admission to the nursing home. Sufficient consideration exists for the arbitration agreement, notwithstanding the lower court's opinion to the contrary.

### III. Conclusion

**{¶ 44}** For the foregoing reasons, we hold that an arbitration agreement voluntarily executed by a nursing-home resident upon her admission and not as a precondition to admission is not rendered procedurally unconscionable solely by virtue of the resident's age. We further hold that an arbitration agreement voluntarily executed by a nursing-home resident and not as a precondition to admission that eliminates the right to trial and to seek punitive damages and attorney fees is not substantively unconscionable. Accordingly, we reverse the judgment of the court of appeals and reinstate the order of the trial court.

Judgment reversed.

MOYER, C.J., and O'DONNELL and CUPP, JJ., concur.

LUNDBERG STRATTON and LANZINGER, JJ., concur in judgment only.

PFEIFER, J., dissents.

_____

**LANZINGER, J., concurring in judgment only.**

{¶ 45} Because a party who wishes to disavow an arbitration agreement must show that the agreement is both procedurally and substantively unconscionable, I concur in judgment only.

{¶ 46} Appellee, Florence Hayes, has not met her burden to establish that the agreement she signed is procedurally unconscionable. We have no record other than two two-page arbitration agreements among the documents signed and the fact that they were signed by a 95-year-old woman on the date she entered the nursing home. The record does not show by testimony, affidavit, or documentary evidence that appellee, when she signed the agreements, was mentally incompetent, or lacked the ability to read or write, or was confused over language in the agreement, or lacked business savvy, or was emotionally stressed. The record does not show any evidence that the nursing-home representative refused to answer any of appellee's questions, or denied her request to obtain an attorney, or rushed her through the terms of the agreement. In short, there is no evidence that anyone at the nursing home manipulated appellee into giving up important statutory rights. Speculation about the circumstances surrounding the signing of the agreements is not sufficient to show procedural unconscionability. I concur in holding that the single fact that one of the parties to an arbitration agreement is of advanced age does not establish procedural unconscionability.

{¶ 47} I depart, however, from the majority's conclusion that this arbitration agreement is not substantively unconscionable. I agree with the dissent that the agreement strips away statutory protections granted to nursing-home residents and defeats the will of the legislature. The majority cites commercial cases in emphasizing the public policy that favors arbitration rights. But the General Assembly has also expressed clearly its intent to protect nursing-home residents through enactment of R.C. Chapter 3721. This is the first time we have considered an arbitration agreement in the nursing-home setting, and we

look to the content of the agreement itself to determine whether it is substantively unconscionable. The arbitration clause here waives appellee's rights to punitive damages and attorney fees but refers to patient rights only by implication in the encompassing words "any dispute" to be subject to arbitration. Because the General Assembly has granted special rights and remedies to those in appellee's circumstances, unless an arbitration clause specifically explains the rights and remedies to be affected by the arbitration agreement, it is substantively unconscionable.

{¶ 48} At least one appellate court has expressed unease over applying arbitration clauses, which initially were designed to save time and money for sophisticated business people involved in contract disputes, to situations where nursing-home residents give up court trials in negligence actions. *Small v. HCF of Perrysburg, Inc.,* 159 Ohio App.3d 66, 2004-Ohio-5757, 823 N.E.2d 19. Although the General Assembly has not prohibited use of arbitration agreements in nursing-home settings, there is movement at the federal level to do so. Two recently introduced Congressional bills would invalidate predispute arbitration agreements between nursing homes and their residents. H.R. 1237, 111th Cong. (introduced Feb. 26, 2009); S. 512, 111th Cong. (introduced Mar. 3, 2009).

{¶ 49} Not every dispute is arbitrable. This court has held as a matter of public policy that child custody disputes are not subject to arbitration. *Kelm v. Kelm* (2001), 92 Ohio St.3d 223, 749 N.E.2d 299, syllabus. It may well be that the General Assembly will act at some point to expressly ban certain arbitration agreements in situations like this. Since it has not yet done so, appellee must prove *both* procedural and substantive unconscionability. Because appellee has not fulfilled the burden to show both, I reluctantly concur in the judgment of the court.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

**PFEIFER, J., dissenting.**

{¶ 50} I dissent for several reasons. First, I would hold that any nursing-home preadmission arbitration agreement is unconscionable as a matter of public policy. Alternatively, I would hold that the specific agreements in this case were unconscionable as a matter of public policy. More narrowly, I would hold that the arbitration agreements in this case were both substantively and procedurally unconscionable.

## I

{¶ 51} In its analysis of the details of this particular matter, the majority ignores the big picture. This is an important case. This court should declare all nursing-home preadmission arbitration agreements unenforceable as a matter of public policy. Arbitration clauses that limit elderly or special-needs patients' access to the courts for claims of negligence or abuse in their care should simply not be honored or enforced by the courts of this state. The General Assembly has enunciated a public policy in favor of special protection of nursing-home residents through its passage of the Ohio Nursing Home Patients' Bill of Rights, R.C. 3721.10 et seq. "[W]here there is a strong public policy against a particular practice, a contract or clause inimical to that policy will likely be declared unconscionable and unenforceable unless the policy is clearly outweighed by some legitimate interest in favor of the individual benefited by the provision." 8 Williston on Contracts (4th Ed.1998) 43, Section 18:7.

{¶ 52} This court today has provided its imprimatur to arbitration agreements that enable nursing homes to avoid the enforcement of the rights and protections provided to nursing-home residents by the General Assembly. The mantra that arbitration is always to be favored must not be mindlessly muttered. In some areas, arbitration is not appropriate; the protection of nursing-home residents is certainly one such area.

**{¶ 53}** A public policy against preadmission arbitration agreements is reflected in the Ohio Nursing Home Patients' Bill of Rights. Further, this court should recognize a public policy against preadmission arbitration agreements based upon the practical inappropriateness of such agreements for nursing-home residents.

*A*

**{¶ 54}** By enacting the Ohio Nursing Home Patients' Bill of Rights, R.C. 3721.10 et seq., the General Assembly has demonstrated particular interest in ensuring the rights of nursing-home patients and has provided statutory remedies for those patients whose rights are violated. R.C. 3721.13(A) specifically enumerates 32 important rights, including the right "to a safe and clean living environment" (R.C. 3721.13(A)(1)), the right "to be free from physical, verbal, mental, and emotional abuse and to be treated at all times with courtesy, respect, and full recognition of dignity and individuality" (R.C. 3721.13(A)(2)), "the right to adequate and appropriate medical treatment and nursing care and to other ancillary services that comprise necessary and appropriate care consistent with the program for which the resident contracted" (R.C. 3721.13(A)(3)), the right "to have all reasonable requests and inquiries responded to promptly" (R.C. 3721.13(A)(4)), the right "to have clothes and bed sheets changed as the need arises, to ensure the resident's comfort or sanitation" (R.C. 3721.13(A)(5)), and the right "to voice grievances and recommend changes in policies and services to the home's staff, to employees of the department of health, or to other persons not associated with the operation of the home, of the resident's choice, free from restraint, interference, coercion, discrimination, or reprisal" (R.C. 3721.13(A)(31)).

**{¶ 55}** R.C. 3721.17 contains the enforcement provision of the Ohio Nursing Home Patients' Bill of Rights. Pursuant to R.C. 3721.17(I)(1)(a), "[a]ny resident whose rights under sections 3721.10 to 3721.17 of the Revised Code are

violated has a cause of action against any person or home committing the violation." The use of injunctive relief to achieve a proper level of care is clearly contemplated by the General Assembly. The General Assembly calls for the award of attorney fees when residents resort to injunctive relief. In cases "in which only injunctive relief is granted, [the court] may award to the prevailing party reasonable attorney's fees limited to the work reasonably performed." R.C. 3721.17(I)(2)(c).

{¶ 56} R.C. 3721.17 also allows residents to employ other methods to ensure their rights. Those include reporting violations of the Ohio Nursing Home Patients' Bill of Rights to the grievance committee established at the home pursuant to R.C. 3721.12(A)(2). The statute requires that a combination of residents, sponsors, or outside representatives outnumber nursing-home staff two to one on such committees. Another statutory option for residents is to pursue a claim through the Department of Health. R.C. 3721.031.

{¶ 57} The General Assembly has given nursing-home residents rights and a multitude of ways to preserve those rights. An agreement to arbitrate all disputes flies in the face of the statutory protections of nursing-home residents and should be found unconscionable as a matter of public policy.

*B*

{¶ 58} Practical realities make arbitration agreements signed prior to admission to nursing homes contrary to public policy. Proving substantive unconscionability is unduly burdensome in the nursing-home context, and that fact is illustrated in this particular case. To escape an arbitration agreement, elderly persons must recall with clarity — months or years after the execution of the agreement — what happened at the signing, what was or was not explained to them, and what they understood at the time. The sad fact is that a stay at a nursing home most often signals deterioration. That happened in this case. Within a month of entering Oakridge, Florence Hayes fractured her hip. She was

never well enough to return to Oakridge before her death. Now her attorney must attempt to prove, without her, what happened when Florence Hayes executed her arbitration agreements. The types of problems in this case are likely to be universal among nursing-home residents.

{¶ 59} Further, physical and mental deterioration prevents nursing-home residents from taking advantage of the option to rescind an agreement. An arbitration agreement may have a very fair opt-out clause, but it is worthless to someone unable physically or mentally to take advantage of it.

{¶ 60} By the time an arbitration clause is put into play, either time or the nursing home's own negligence can leave the resident without the ability to recall whether the agreement was validly entered into. The special circumstances attendant to nursing-home care require a judgment from this court that preadmission arbitration agreements are contrary to public policy.

## II

{¶ 61} Even if this court is unwilling to find all preadmission arbitration agreements in the nursing-home setting to be contrary to public policy, it should find that the specific agreements in this case were unconscionable and unenforceable as a matter of public policy.

{¶ 62} Pursuant to R.C. 3721.17(I)(2)(b), "[i]f compensatory damages are awarded for a violation of the resident's rights, section 2315.21 of the Revised Code shall apply to an award of punitive or exemplary damages for the violation." The General Assembly has determined that punitive damages and attorney fees should be available to nursing-home patients in order to protect their statutory rights. The arbitration agreements in this case remove the possibility of a resident acquiring either. The pertinent provision appears midway through the arbitration agreements, not in the introductory "Explanation" portion of the agreements, nor in the bolded, all capitalized "Acknowledgement" section. It reads:

{¶ 63} "Each party may be represented by counsel in connection with all arbitration proceedings and each party agrees to bear their own attorney fees and costs. Payment of any other awards, fees and costs associated with these arbitration proceedings shall be determined by the panel of arbitrators, provided that the award in arbitration shall not include any amount for exemplary or punitive damages."

{¶ 64} In regard to punitive damages, the cold truth is that for elderly nursing-home patients, compensatory damages alone are limited as a practical matter. Life expectancy is short, lost wages are nonexistent, and in many cases, the elderly victim may be unable to communicate the true extent of his or her injuries. The threat of punitive damages operates as another incentive for nursing homes to respect the dignity of their residents.

{¶ 65} The availability of attorney fees ensures that nursing-home residents are not hindered from exerting their rights by the specter of cost. Under the Ohio Nursing Home Patients' Bill of Rights, residents can seek to enforce the many rights set forth in the statutes through injunctive relief and can recover the attorney fees necessary to obtain that relief. An arbitration agreement that removes the possibility of a recovery of attorney fees takes the teeth out of a key enforcement provision of that legislation. Not only do the agreements in this case deny recovery of attorney fees, but they further defy the Ohio Nursing Home Patients' Bill of Rights by requiring the residents to pay their share of the cost of the arbitration. Residents know that any attempt to enforce their rights will be costly. That is exactly the opposite of the General Assembly's intent.

{¶ 66} Although the arbitration agreements in this case prohibit punitive damages and attorney fees for both parties, the practical reality recognized by the statute is that only a resident could ever hope to recover them. Oakridge is giving up nothing.

{¶ 67} The General Assembly has identified nursing-home residents as being particularly vulnerable and has instituted protections for them. The arbitration agreements in this case are one-sided and strip away statutory protections that the General Assembly has determined to be necessary for the welfare of residents. The General Assembly has spoken clearly as to the public policy of this state, and the agreements in this case just as clearly flout the will of the people. They are unconscionable and unenforceable as a matter of public policy.

## III

{¶ 68} The majority does not address unconscionability from the perspective of public policy, instead deciding the case on the basis of procedural and substantive unconscionability. Even under that approach, today's decision is wrongly decided. The arbitration agreements at issue are both procedurally and substantively unconscionable.

### A

{¶ 69} The substantive unconscionability of the arbitration agreements at issue in this case is discussed in Part II, above. The agreements strip away statutory protections granted to nursing-home residents by the General Assembly in the Nursing Home Patients' Bill of Rights. The agreements forbid an award of punitive damages or attorney fees without any explanation that those rights are both statutorily guaranteed. The agreements are one-sided in their results and defeat the will of the legislature. They are thus substantively unconscionable.

### B

{¶ 70} The party challenging a contract as unconscionable must prove a quantum of both procedural and substantive unconscionability. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34. However, substantive and procedural unconscionability need not be present in equal measure in the agreement in question:

**{¶ 71}** " 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' (15 Williston on Contracts (3d ed. 1972) 1763A, pp. 226-227 * * *.)  In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.* (2000), 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669.

**{¶ 72}** In other words, " '[T]he substantive/procedural analysis is more of a sliding scale than a true dichotomy.  The harsher the clause, the less "bargaining naughtiness" that is required to establish unconscionability.' " *Tillman v. Commercial Credit Loans, Inc.* (2008), 362 N.C. 93, 103, 655 S.E.2d 362, quoting *Tacoma Boatbuilding Co. v. Delta Fishing Co.* (W.D.Wash.1980), 28 U.C.C.Rep.Serv. (CBC) 26, 37, fn. 20.  The seriousness of the substantive unconscionability of the arbitration agreements in this case requires proof of only minor procedural unconscionability.

**{¶ 73}** The majority opinion does not seriously address the procedural unconscionability in this case.  The first syllabus paragraph responds to nothing but a straw man.  It reads: "An arbitration agreement voluntarily executed by a nursing-home resident upon her admission and not as a precondition to admission is not rendered procedurally unconscionable *solely by virtue of the resident's age*." (Emphasis added.)  No one has argued that the arbitration agreements in this case are procedurally unconscionable *solely* by virtue of Florence Hayes's age.  The fact that Florence Hayes was 95 years old is merely one relevant fact.  Her age is not enough to make a contract she entered into procedurally unconscionable; nonagenarians are capable of forming valid contracts.

{¶ 74} On the day she signed the two arbitration agreements – one for malpractice claims and one for other claims – factors beyond age were working against Florence Hayes. Oakridge, part of a company owning 200 elder-care facilities, presented Florence Hayes with a preprinted form. Oakridge does not dispute that Florence Hayes was a 95-year-old woman who was debilitated enough to require transport in an ambulance from a hospital to nursing-home care. Still, those facts may not be enough to render a contract procedurally unconscionable. But additionally, the arbitration contracts in this case were presented to her on the very day she was entering the nursing home, an emotional if not traumatic occasion for any person. Additionally, on the day that this 95-year-old was being admitted, Oakridge gave her at least 29 pages of documents to review. Additionally, among those 29 pages of documents, Florence's signature or initials were required in 11 different places. Additionally, every document — except the arbitration agreements — related to the care Florence would receive in the Oakridge Home. Oakridge claims that signing the arbitration agreements was not required for admission to the facility. Why, then, were they included with the admission documents? Why would documents having absolutely nothing to do with Florence's care plan be presented to her amidst the documents that were related to her care plan? Florence Hayes did not go to Oakridge to bargain over an arbitration agreement; she went to Oakridge to be taken care of. The arbitration agreements were of a completely different character from the other documents she was signing.

{¶ 75} Additionally, the arbitration agreements on their face present an unbalanced characterization of the benefits of arbitration versus litigation. The introductory "Explanation" part of the arbitration agreements provides: "Arbitration is a method of resolving disputes without the substantial time and expense of using the judicial system. An arbitration hearing takes only weeks or months to schedule, while civil litigation generally takes years to complete." That

apples-to-oranges comparison speaks only of the time involved in *scheduling* an arbitration, while it talks of the time it takes to *complete* litigation. Further, it does not account for the likelihood of the completion of litigation through settlement. The "Explanation" further provides, "By avoiding the judicial system, many costs are eliminated." The statement, however, does not mention that in arbitrations, discovery can be limited. Finally, the "Explanation" concludes, "By signing [this agreement], you will give up your constitutional right to a jury or court trial and you agree that any dispute between you and the facility will be subject to arbitration." The Explanation does not mention that the agreement forbids exemplary or punitive damages or an award of attorney fees.

{¶ 76} Above the signature line in the "Acknowledgements" section of the agreements, there is a statement in bold, capital letters that again makes no mention of a prohibition of punitive damages and attorney fees:

{¶ 77} "THE UNDERSIGNED ACKNOWLEDGE THAT EACH OF THEM HAS READ THIS ARBITRATION AGREEMENT AND UNDERSTANDS THAT BY SIGNING THIS ARBITRATION AGREEMENT EACH HAS WAIVED HIS/HER RIGHT TO A TRIAL, BEFORE A JUDGE OR JURY, AND THAT EACH OF THEM VOLUNTARILY CONSENTS TO ALL OF THE TERMS OF THE ARBITRATION AGREEMENT."

{¶ 78} The arbitration agreements in this case are stingy with any acknowledgement of the drawbacks of arbitration. Oakridge in this case used its expertise and superior bargaining position to create boilerplate documents designed to draw in its residents and presented them at a time when residents would believe that the execution of the arbitration agreements was necessary for admission.

{¶ 79} Thus, this case does not present the question of whether a 95-year-old should be free to enter into any contract. Instead, we are called upon to look at the unique circumstances surrounding the execution of the specific arbitration

agreements involved in this case. Here, we have a 95-year-old woman in a fragile state, burdened with the emotions of entering a nursing home, inundated with paperwork and requests for her signature, who would have reason to believe that the documents she was executing were necessary for her admission into the facility, and who has been presented an overly rosy picture of the benefits of arbitration in a nonnegotiated contract that she never sought. All of *these* facts are in the record and briefs. That she was infirm and 95 years old is the least of the factors that make the arbitration agreements procedurally unconscionable.

{¶ 80} The relative bargaining positions of the parties, the circumstances surrounding the execution of the agreement, and the misleading characterization of the benefits of arbitration in the agreements themselves are all evidence of the procedural unconscionability of the arbitration agreements.

*C*

{¶ 81} Since the arbitration agreements are both substantively and procedurally unconscionable, they are invalid.

**IV**

{¶ 82} The tactics employed by Oakridge and countenanced by the majority in this case are appalling. This court today provides a roadmap for nursing-home facilities to avoid the responsibilities of the Ohio Nursing Home Patients' Bill of Rights.

{¶ 83} Is it really acceptable to shove an arbitration agreement under the nose of a 95-year-woman, newly arrived at the nursing home, as she goes through the signing frenzy of the admission process? Does the majority really believe that Florence Hayes knowingly and voluntarily gave up her statutory rights through a negotiation process?

{¶ 84} The majority suggests that the Constitution demands today's result and that it is this court's duty to defend the right to private contract. The majority writes: "Our citizens do not lose their constitutional rights and liberties simply

because they age." Yes, somewhere in the penumbra of the penumbra of the right to contract, if you squint just so, you can make out what the majority identifies today: the right of the elderly to be "taken in" by nursing homes. This court's corollary right for nursing homes is the right to say, "You signed it. Live with it! Ohio Nursing Home Patients' Bill of Rights? You waived it! Your fundamental constitutional rights? You waived them too! And don't forget to remind your son that we need next month's check for $5,500 by the first."

_____

Dickson & Campbell, L.L.C., and Blake A. Dickson, for appellee.

Buckingham, Doolittle & Burroughs, L.L.P., Dirk E. Riemenscheider, Beth A. Nagel, Thomas R. Himmelspach, and Timothy A. Spirko, for appellant.

_____